1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10    KELLY CROWE,

11            Plaintiff,                    No. 2:11-cv-3438 JAM DAD PS

12       vs.

13    RAMA GOGINENI, et al.,               FINDINGS AND RECOMMENDATIONS

14            Defendants.

15    _____/

16            This matter came before the court on August 31, 2012, for hearing of defendant

17    Rama Gogineni's motion to dismiss (Doc. No. 10) and motion for an order setting amount of

18    security (Doc. No. 13), and defendant Bullivant Houser Bailey's motion for an order setting

19    amount of security (Doc. No. 26), motion to dismiss (Doc. No. 30) and special motion to strike.

20    (Doc. No. 32.)  Jeff Stone, Esq. appeared for defendant Rama Gogineni.  Kate Kimberlin, Esq.

21    appeared for defendant Bullivant Houser Bailey.  Plaintiff Kelly Crowe appeared on his own

22    behalf.

23            On August 31, 2012, oral argument was heard, defendant Bullivant Houser

24    Bailey's unopposed motion to dismiss (Doc. No. 30) was granted, defendant Bullivant Houser

25    Bailey's June 7, 2012 motion for an order setting amount of security (Doc. No. 26) was denied as

26    /////

1 having been rendered moot and defendants' remaining motions were taken under submission at

2 that time.[1]  (Doc. No. 57.)

3                                                    BACKGROUND

4          Plaintiff Kelly Crowe, proceeding pro se, commenced this action on December

5 27, 2011, by filing a complaint and paying the required filing fee.  (Doc. No. 1.)  Therein,

6 plaintiff alleged as follows.  On February 19, 2000, plaintiff and defendant Rama Gogineni

7 entered into a shareholder agreement in which each party held shares of Cosmic Technologies

8 Corp. ("Cosmic"), a now dissolved California corporation.  (Compl. (Doc. No. 1) at 2.)[2]

9 Defendant Gogineni was the director, president, secretary, treasurer and majority shareholder of

10 Cosmic.  (Id.)

11          On February 7, 2003, unbeknownst to plaintiff, defendant Gogineni began

12 approving money transfers from Cosmic to Titan Infotech Corp. ("Titan"), a now dissolved

13 California corporation wholly owned by defendant Gogineni.  (Id. at 5.)  By the end of April of

14 2003, however, Cosmic was generating sufficient profits to make distributions to its

15 shareholders.  (Id. at 2.)  Gogineni informed plaintiff that a tax professional had advised

16 Gogineni that there were significant tax benefits to making those distributions in the form of

17 salary to plaintiff and Gogineni instead of paying formal dividends.  (Id.)  Plaintiff agreed to

18 permit the distributions to be made in the form of unearned salary.  (Id.)

19 /////

20 /////

21 /////

22

23          [1]  Plaintiff filed a statement of non-opposition to defendant Bullivant Houser Bailey's
motion to dismiss on August 17, 2012.  (Doc. No. 47.)  Despite the granting of their motion to

24 dismiss, defendant Bullivant Houser Bailey wished to pursue their special motion to strike (Doc.
No. 32) upon which, if they were to prevail, they may recover attorney fees and costs.

25

26          [2]  Page number citations such as this one are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

1    On May 8, 2003, Cosmic commenced declaring constructive dividends in the

2    form of unearned salary.[3]  (Id. at 3.)  Around the same time plaintiff and Gogineni began having

3    trouble working together.  (Id.)  Moreover, the constructive dividends paid and "labeled falsely as

4    salary" were raised, lowered or temporally suspended from time to time, the shareholders roles in

5    Cosmic and their hours worked did not warrant the payments received, the payments grossly

6    exceed compensation paid to similarly situated employees and the condition of Cosmic's sales

7    and income did not warrant the payments made.  (Id. at 6.)

8    On June 20, 2003, plaintiff received a letter from Whitney Washburn, an attorney

9    hired by Gogineni, informing plaintiff that Gogineni was contesting plaintiff's title to stock in

10   Cosmic, was alleging that plaintiff was in breach of the shareholders' agreement and that

11   plaintiff's employment with Cosmic was therefore terminated.  (Id. at 3.)  Plaintiff stopped

12   receiving constructive dividends in the form of unearned salary from Cosmic, although Gogineni

13   continued to receive such dividends through 2005.  (Id. at 5.)

14   In July of 2003, defendant Bullivant Houser Bailey ("BHB") was retained by

15   Cosmic to respond to an application for order directing Cosmic to hold an annual shareholders

16   meeting.  (Id. at 4.)  On August 29, 2003, plaintiff received a letter from BHB informing plaintiff

17   that BHB was retained to serve as Cosmic's corporate counsel, BHB had determined that

18   plaintiff was a valid shareholder in Cosmic, Cosmic would be holding an annual shareholders

19   meeting on December 31, 2003, BHB was aware that Gogineni had retained counsel concerning

20   a pending dispute between the shareholders, BHB would like to discuss the purchase of

21   plaintiff's shares in Cosmic and Cosmic's board of directors would consider any dividend

22   distributions at the close of the fiscal year after consultation with the corporation's accountants.

23   (Id.)  BHB also represented Cosmic in an action filed in October of 2003, which concluded in

24

25   [3]  Although the complaint actually alleges this date as being May 8, 2000, given the chronology provided by plaintiff's factual allegations, the undersigned assumes that the date

26   alleged as May 8, 2000 is a typo and that plaintiff intended to allege a date of May 8, 2003.

1   June of 2004.  (Id.)  On July 27, 2004 BHB sent plaintiff a letter indicating that BHB had again

2   been retained by Cosmic to file an action to quiet title to each shareholder's stock.  (Id. at 4.)

3        On December 26, 2008, plaintiff discovered the money transfers from Cosmic to

4   Titan that Gogineni had previously approved.  (Id. at 5.)  On March 17, 2009, plaintiff sent

5   Gogineni a letter demanding that Gogineni provide proof that the transactions between Cosmic

6   and Titan were just and reasonable as to Cosmic.  (Id.)  On April 1, 2009, plaintiff sent another

7   letter to Gogineni, this one demanding proof that the large and irregular payments to Gogineni

8   from Cosmic labeled as pay were just and reasonable as to Cosmic.  (Id. at 6.)  Gogineni refused

9   to respond.  (Id.)  Plaintiff claims that Gogineni used Cosmic's corporate funds to send money to

10   Kantamaneni Rajani in India, who performed no work for Cosmic and who distributed the money

11   sent by Gogineni to Gogineni's family members.  (Id. at 7.)

12        Based on these allegations, plaintiff instituted this action alleging fraudulent

13   concealment, breach of fiduciary duty and civil conspiracy against all defendants as well as

14   negligent misrepresentation against defendant Gogineni only.[4]

15        On May 3, 2012, defendant Gogineni filed a motion to dismiss (Doc. No. 10) and

16   a motion for an order setting amount of security.[5]  (Doc. No. 13).  On August 17, 2012, plaintiff

17   filed an opposition to Gogineni's motion to dismiss (Doc. No. 43), and an opposition to

18   Gogineni's motion for an order setting amount of security.  (Doc. No. 44.)  Gogineni filed his

19   replies on August 24, 2012.  (Doc. Nos. 52 & 55.)  Following the September 7, 2012, hearing of

20   defendants' motions, plaintiff was allowed to file a supplemental opposition to defendant

---

21

22      [4]  The complaint alleges that this court has diversity jurisdiction over this matter pursuant
to 28 U.S.C. § 1332.

23      [5]  Normally, the undersigned would recount the complete history of the parties' briefing

24   by simply noting the filing of the motion, the opposition and the reply.  Here, however, plaintiff
and defendant Gogineni have littered the court's docket with requests for judicial notice,
declarations, objections to requests for judicial notice, responses to objections to requests for

25   judicial notice, additional requests for judicial notice in support of sur reply, etc.  Accordingly, in
the interests of brevity and clarity, the court has not recounted every document filed by the parties

26   in connection with the pending motions.

1    Gogineni's motion to dismiss and defendant Gogineni was permitted to file a sur reply.  (Doc.

2    No. 57.)  Plaintiff filed his supplemental opposition on September 7, 2012, (Doc. No. 58) and

3    defendant Gogineni filed his sur reply on September 13, 2012.  (Doc. No. 61.)

4                    Defendant BHB filed its special motion to strike on June 7, 2012.  (Doc. No. 32.)

5    Plaintiff filed his opposition to that motion on August 17, 2012, (Doc. No. 46), and BHB filed its

6    reply on August 22, 2012.  (Doc. No. 50.)  After the September 7, 2012, hearing of defendants'

7    motions, plaintiff was granted leave to file a declaration with respect to BHB's special motion to

8    strike and defendant BHB was granted leave to file a reply to plaintiff's declaration.  (Doc. No.

9    57.)  Plaintiff filed his declaration on September 10, 2012, (Doc. No. 60) and defendant BHB

10   filed its reply on September 17, 2012.  (Doc. No. 64.)

11                                              ANALYSIS

12   I.  BHB's Special Motion to Strike Under C.C.P. § 425.16

13                    California Code of Civil Procedure § 425.16(b)(1), (also know as the

14   "anti-SLAPP statute") provides:

15               A cause of action against a person arising from any act of that
                 person in furtherance of the person's right of petition or free speech
16               under the United States Constitution or the California Constitution
                 in connection with a public issue shall be subject to a special
17               motion to strike, unless the court determines that the plaintiff has
                 established that there is a probability that the plaintiff will prevail
18               on the claim.

19   See Manufactured Home Communities, Inc. v. County of San Diego, 655 F.3d 1171, 1176 (9th

20   Cir. 2011).  California's anti-SLAPP law is aimed at curtailing civil actions designed to deter

21   private citizens from exercising their rights of free speech.  U.S. ex rel. Newsham v. Lockheed

22   Missiles & Space Co., 190 F.3d 963, 970 (9th Cir. 1999).  The Ninth Circuit permits anti-SLAPP

23   motions in federal court directed at state law claims such as that asserted by plaintiff against

24   defendant BHB in this action.  Id. at 973; see also Verizon Delaware, Inc. v. Covad

25   Communications Co., 377 F.3d 1081, 1091 (9th Cir. 2004) ("We have previously confirmed that

26   /////

1    defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are

2    entitled to attorneys' fees and costs when they prevail.").

3            "However, '[s]pecial procedural rules apply where an anti-SLAPP motion is

4    brought in federal court.'" Thornbrough v. Western Placer Unified School District, No. 2:09-cv-

5    02613-GEB-GGH, 2010 WL 2179917, at *3-4  (E.D. Cal. May 27, 2010) (quoting Lauter v.

6    Anoufrieva, 642 F. Supp.2d 1060, 1109 (C.D. Cal. 2009)). See also Robinson v. Alameda

7    County, No. C-12-00730 (JCS), 2012 WL 2367821, at *15 (N.D. Cal. June 21, 2012); Bulletin

8    Displays, LLC v. Regency Outdoor Advertising, Inc., 448 F. Supp.2d 1172, 1180 (C.D. Cal.

9    2006)); but see Verizon Delaware, Inc., 377 F.3d at 1091 ("[P]rocedural state laws are not used

10   in federal court if to do so would result in a direct collision with a Federal Rule of Civil

11   Procedure . . . . ").

12           If a defendant makes an anti-SLAPP motion based on the
             plaintiff's failure to submit evidence to substantiate its claims, the
13           motion is treated as a motion for summary judgment, and discovery
             must be developed sufficiently to permit summary judgment under
14           Rule 56.  This is because to permit a defendant to invoke the Anti-
             SLAPP statute to require a plaintiff to present evidence to support
15           his claims before an opportunity for discovery would directly
             conflict with Federal Rule of Civil Procedure 56.  If an anti-SLAPP
16           motion is based on legal deficiencies in the complaint, a federal
             court must determine the motion in a manner that complies with
17           the standards set by Federal Rules 8 and 12.

18   Lauter, 642 F. Supp.2d at 1109 (quotation and citations omitted) (denying an anti-SLAPP motion

19   to dismiss or strike without prejudice because discovery in the action had not closed).  See also

20   Condit v. National Enquirer, Inc., 248 F. Supp.2d 945, 953 (E.D. Cal. 2002) ("A special motion

21   to strike under section 425.16 can be based on any defect in the Complaint, including legal

22   deficiencies addressable on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

23   or a failure to support a stated claim with evidence, analogous to a motion for summary judgment

24   under Fed. R. Civ. P. 56.").

25           Here, "since this action is still in its infancy, requiring Plaintiff to present

26   evidence to support his claims without the opportunity for discovery would directly conflict with

6

1  Federal Rule of Civil Procedure 56." <u>Thornbrough</u>, 2010 WL 2179917, at * 4.  <u>See</u> <u>also</u> <u>Rogers</u>

2  <u>v. Home Shopping Network, Inc.</u>, 57 F. Supp.2d 973, 980 (C.D. Cal. 1999) ("If a defendant

3  desires to make a special motion to strike [under section 425.16] based on the plaintiff's lack of

4  evidence, the defendant may not do so until discovery has been developed sufficiently to permit

5  summary judgment under Rule 56.").  Moreover, it appears clear from BHB's motion to strike

6  that they are arguing that plaintiff's complaint is legally deficient with respect to its allegations

7  and claims against them.  Therefore, the pending motion brought on behalf of defendant BHB

8  will be evaluated as a challenge to the legal sufficiency of plaintiff's complaint under Rule 8 and

9  Rule 12 of the Federal Rules of Civil Procedure.

10           Evaluating a motion made pursuant to the anti-SLAPP statute "requires a two-part

11  analysis: (1) the defendant must make a prima facie showing that the suit arises 'from an act in

12  furtherance of the defendant's rights of petition or free speech'; and (2) once the defendant

13  makes this showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing

14  on the challenged claims.'" <u>Roberts v. McAfee, Inc.</u>, 660 F.3d 1156, 1163 (9th Cir. 2011)

15  (quoting <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 595 (9th Cir. 2010)).  <u>See</u> <u>also</u> <u>Equilon</u>

16  <u>Enterprises v. Consumer Cause, Inc.</u>, 29 Cal.4th 53, 67 (2002).

17           An "act in furtherance of a person's right of petition or free speech" includes:

18           1) any written or oral statement or writing made before a
             legislative, executive, or judicial proceeding, or any other official
19           proceeding authorized by law;

20           (2) any written or oral statement or writing made in connection
             with an issue under consideration or review by a legislative,
21           executive, or judicial body, or any other official proceeding
             authorized by law;
22
             (3) any written or oral statement or writing made in a place open to
23           the public or a public forum in connection with an issue of public
             interest;
24
             (4) or any other conduct in furtherance of the exercise of the
25           constitutional right of petition or the constitutional right of free
             speech in connection with a public issue or an issue of public
26           interest.

7

1   Mindys, 611 F.3d at 595-96 (quoting CAL. CIV. PROC. CODE § 425.16(e)). "'In the anti-SLAPP

2   context, the critical consideration is whether the cause of action is based on the defendant's

3   protected free speech or petitioning activity.'" In re Episcopal Church Cases, 45 Cal.4th 467,

4   477-78 (2009) (quoting Navellier v. Sletten, 29 Cal.4th 82, 89 (2002)); see also City of Cotati v.

5   Cashman, 29 Cal.4th 69, 78 (2002) ("[T]he critical point is whether the plaintiff's cause of action

6   itself was based on an act in furtherance of the defendant's right of petition or free speech.").

7           "[T]he validity of the speech or petitioning activity is ordinarily not a

8   consideration in analyzing the 'arising from' prong." M.F. Farming, Co. v. Couch Distributing

9   Co., 207 Cal. App.4th 180, 195 (2012). In this regard, a defendant "need not establish that its

10  action is constitutionally protected; rather, it must make a prima facie showing that plaintiff's

11  claim arises from an act taken to further defendant's rights of petition or free speech in

12  connection with a public issue." Price v. Operating Engineers Local Union No. 3, 195 Cal.

13  App.4th 962, 970 (2011). Thus, "the courts of California have interpreted this piece of the

14  defendant's threshold showing rather loosely." Hilton v. Hallmark Cards, 599 F.3d 894, 904 (9th

15  Cir. 2010).

16          Moreover, "[w]here . . . a cause of action alleges the plaintiff was damaged by

17  specific acts of the defendant that constitute protected activity under the statute, it defeats the

18  letter and spirit of section 425.16 to hold it inapplicable because the liability element of the

19  plaintiff's claim may be proven without reference to the protected activity." Peregrine Funding,

20  Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App.4th 658, 674 (2005). See also

21  Salma v. Capon, 161 Cal. App.4th 1275, 1287 (2008) ("A mixed cause of action is subject to

22  section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of

23  protected conduct are merely incidental to the unprotected activity.").

24          Here, plaintiff's complaint presents causes of action against defendant BHB for

25  fraudulent concealment, breach of fiduciary duty and civil conspiracy. With respect to his claim

26  for fraudulent concealment, plaintiff's complaint alleges that in response to a July 2004 letter he

1   sent to BHB indicating that he suspected Gogineni of funneling money to himself from Cosmic

2   and demanding an inspection of Cosmic's accounting records, BHB sent plaintiff Cosmic's

3   "Financial Statements" covering the fiscal years 2000 through 2003.  (Compl. (Doc. No. 1) at 7-

4   8.)  Then in 2006, according to plaintiff, BHB provided him with "Financial Statements" for the

5   fiscal years 2004 through the first quarter of 2006.  (Id. at 8.)  Plaintiff alleges that these financial

6   statements "omitted the transactions between Cosmic and Titan," and that while they may have

7   included the "other transactions that were suspected by Plaintiff as identified in his" letter to

8   BHB, those other transactions were not included "in a manner that a reasonable person would

9   have known what was occurring."  (Id.)  Moreover, the complaint alleges that although plaintiff

10  "made several attempts through the courts to obtain Cosmic's banking records" BHB was able to

11  prevent plaintiff from obtaining access to those records until December 26, 2008.  (Id.)

12          With respect to his claim that defendant BHB breached a fiduciary duty owed to

13  him, the complaint alleges that once plaintiff informed BHB that he suspected Gogineni was

14  funneling money from Cosmic to himself, BHB owed plaintiff a duty to conduct a reasonable

15  inquiry.  In this regard, the complaint alleges that BHB breached their fiduciary duty to plaintiff

16  by failing to be honest and forthright in responding to plaintiff's inquiry.  (Id. at 16.)

17          With respect to his civil conspiracy cause of action, plaintiff's complaint alleges

18  that BHB conspired with Gogineni to allow Gogineni to funnel money to himself in exchange for

19  Gogineni continuing to retain BHB to represent Cosmic.  (Id. at 17.)  In this regard, the

20  complaint alleges that BHB "fraudulently inform[ed] the court on May 5, 2005 when plaintiff

21  applied for a protective injunction that Cosmic has ceased declaring any constructive dividends

22  to any shareholders as of June 2003."  (Id. at 17.)

23  /////

24  /////

25  /////

26  /////

9

1    In moving to strike plaintiff's complaint, defendant BHB has provided a history of

2    plaintiff's litigation against, and BHB's representation of, Cosmic.[6]  According to BHB, on July

3    11, 2003, plaintiff filed his first complaint against Cosmic in the Sacramento County Superior

4    Court, seeking an order directing Cosmic to hold an annual shareholder's meeting.  (MTS (Doc.

5    No. 32) at 9.)  That matter was dismissed by the court on August 4, 2003.  (Id.)

6    Plaintiff filed his second lawsuit on October 29, 2003, naming Cosmic as a co-

7    plaintiff and seeking an injunction to restrain Gogineni from acting as director of the corporation.

8    (Id.)  In 2005, plaintiff filed five additional lawsuits against Cosmic.  (Id. at 10.)  Meanwhile, the

9    2003 action eventually proceeded to trial, judgment was entered against plaintiff, he appealed,

10   and the appellate court affirmed that judgment in 2006.  (Id.)

11   BHB represented Cosmic in each of the seven lawsuits plaintiff has filed against

12   Cosmic.  (Id. at 9-10.)  On April 28, 2006, BHB filed a motion on Cosmic's behalf joining a

13   motion to declare plaintiff a vexatious litigant filed by defendant Gogineni.  (Id. at 11.)  On May

14   25, 2006, the Sacramento County Superior Court entered an order deeming plaintiff a vexatious

15   litigant.  (Id.)

16   Based on these facts, defendant BHB contends that each of plaintiff's causes of

17   action against BHB "stem from some action or communication made by BHB on behalf of

18   Cosmic as part of ongoing litigation between Crowe, Cosmic and Gogineni."  (Id. at 12.)  In

19   support of this contention, BHB has provided a chart matching every allegation from plaintiff's

20   complaint referencing BHB to how that action was related to the parties' ongoing litigation.  (Id.

21

22   _____

     [6]  In support of its motion to strike, defendant BHB has filed a request for judicial notice
23   of various documents in plaintiff's numerous state court civil actions.  (Doc. No. 33.)  A court
     may take judicial notice of its own files and documents filed in other courts.  Reyn's Pasta Bella,
24   LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006); Burbank-Glendale-Pasadena
     Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Hott v. City of San Jose,
25   92 F. Supp.2d 996, 998 (N.D. Cal. 2000); see also Fed. R. Evid. 201; Lee v. City of Los Angeles,
     250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider matters of
26   public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on a motion
     to dismiss, the court may take judicial notice of matters of public record outside the pleadings).

at 13-14.)  For example, the Financial Statements BHB sent to plaintiff in response to his July

2004 letter related to the parties' ongoing litigation in the Sacramento County Superior Court,

Case No. 03AS06068.  (Id. at 14.)  The complaint's allegation that BHB "fraudulently inform[ed]

the court on May 5, 2005 when plaintiff applied for a protective injunction that Cosmic has

ceased declaring any constructive dividends to any shareholders as of June 2003," refers to a

statement found in an opposition filed by BHB on behalf of Cosmic in the Sacramento County

Superior Court, Case No. 04CS01039.  (Id. at 14.)

As noted above, § 425.16 protects "any written or oral statement or writing made

in connection with an issue under consideration or review by a . . . judicial body . . . ."  CAL.

CODE CIV. PRO. § 425.16 (e)(2).  Thus, "statements, writings and pleadings in connection with

civil litigation are covered by the anti-SLAPP statute, and that statute does not require any

showing that the litigated matter concerns a matter of public interest."  Rohde v. Wolf, 154 Cal.

App.4th 28, 35 (2007).  "Moreover, communications preparatory to or in anticipation of the

bringing of an action or other official proceeding are within the protection of the litigation

privilege of Civil Code section 47, subdivision (b) . . . and such statements are equally entitled to

the benefits of section 425.16."  Bailey v. Brewer, 197 Cal. App.4th 781, 789 (2011) (internal

citation and quotation omitted).  Finally, "although litigation may not have commenced, if a

statement concerns the subject of the dispute and is made in anticipation of litigation

contemplated in good faith and under serious consideration then the statement may be petitioning

activity protected by section 425.16."  Neville v. Chudacoff, 160 Cal. App.4th 1255, 1268 (2008)

(internal citation and quotation omitted).

Here, from 2003 to 2006, plaintiff and defendant BHB were almost constantly

involved in litigation, due to the seven lawsuits filed by plaintiff against BHB's client, Cosmic.

BHB has established that the causes of action alleged by plaintiff against them in this action stem

from BHB's representation of Cosmic in those seven lawsuits.  Accordingly, the complaint's

causes of action are related to BHB's written or oral statements or writings made in connection

with an issue under consideration or review by a judicial body and thus are based on BHB's protected free speech or petitioning activity. See Neville, 160 Cal. App.4th at 1266 ("These cases stand for the proposition that a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."); Rohde, 154 Cal. App.4th at 36-37 ("Defendant's voicemail messages to Weiss were statements made in connection with an asset that was the subject of the dispute in which both plaintiff and defendant threatened litigation. In short, the spectre of litigation loomed over all communications between the parties at that time. Thus, the messages concerning the subject of the dispute and threatening appropriate action in that context had to be in anticipation of litigation 'contemplated in good faith and under serious consideration.'").

In opposing BHB's motion plaintiff argues, in part, that while purportedly representing Cosmic, BHB was actually assisting Gogineni in his fraudulent activity, that such actions by BHB were illegal and that a defendant may not claim protection under § 425.16 for illegal activities. (Pl.'s Opp'n (Doc. No. 46) at 2.)

> The Anti-SLAPP statute cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law, and for that reason, not protected by constitutional guarantees of free speech and petition. [] However, under California state law, conduct that would otherwise come within the scope of the Anti-SLAPP statute does not lose its coverage simply because it is alleged to have been unlawful or unethical. [] The question of whether a defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing. [] The assertedly protected speech or petition activity loses protection only if it is established through defendant's concession or by uncontroverted and conclusive evidence that the conduct is illegal as a matter of law.

Lauter, 642 F. Supp.2d at 1108-09 (internal citation, quotation and footnote omitted).

Here, defendant BHB has clearly not conceded, nor has evidence conclusively established, that its conduct was illegal as a matter of law. See Birkner v. Lam, 156 Cal. App.4th

1    275, 285 (2007) ("An exception to the use of section 425.16 applies only if a 'defendant

2    concedes, or the evidence conclusively establishes, that the assertedly protected speech or

3    petition activity was illegal as a matter of law.'").

4              For the reasons set forth above, the court finds that defendant BHB has made a

5    prima facie showing that plaintiff's causes of action arise from acts in furtherance of BHB's

6    rights of petition or free speech.  Accordingly, defendant BHB has satisfied the first prong of the

7    SLAPP analysis and the burden therefore shifts to plaintiff to demonstrate a probability of

8    prevailing on his claims.

9              To withstand defendant's anti-SLAPP motion,

10             plaintiff must demonstrate that the complaint is both legally
               sufficient and supported by a sufficient prima facie showing of
11             facts to sustain a favorable judgment if the evidence submitted by
               the plaintiff is credited.  In deciding the question of potential merit,
12             the trial court considers the pleadings and evidentiary submissions
               of both the plaintiff and the defendant; though the court does not
13             weigh the credibility or comparative probative strength of
               competing evidence, it should grant the motion if, as a matter of
14             law, the defendant's evidence supporting the motion defeats the
               plaintiff's attempt to establish evidentiary support for the claim.

15

16   Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th Cir. 2011) (quoting Manufactured Home

17   Communities, Inc. v. Cnty. of San Diego, 655 F.3d 1171, 1176-77 (9th Cir. 2011).  Most

18   importantly for purposes of resolving the pending motion to strike,  "[i]f the pleadings are not

19   adequate to support a cause of action, the plaintiff has failed to carry his burden in resisting the

20   motion."  Gilbert v. Sykes, 147 Cal. App.4th 13, 31 (2007).

21             Here, plaintiff's opposition simply fails to address his probability of prevailing on

22   the challenged causes of action.  Moreover, as noted above, plaintiff filed a statement of non-

23   opposition to defendant BHB's motion to dismiss.  Therein, plaintiff acknowledged that "he

24   /////

25   /////

26   /////

1  lacks the main substantive requirement of having standing" to bring this action against BHB.[7]

2  (Pl.'s Non. Opp.'n (Doc. No. 47) at 2.)

3         Accordingly, the undersigned finds that plaintiff has failed to demonstrate a

4  probability of prevailing on his claims.  The undersigned will, therefore, recommend that

5  defendant BHB's motion to strike be granted and that defendant BHB be dismissed from this

6  action.[8]

7  II.  Gogineni's Motion For Order Setting Security

8         Defendant Gogineni seeks an order setting costs to be posted by plaintiff pursuant

9  to Local Rule 151(b) on the ground that plaintiff is a vexatious litigant, having been declared so

10  by the Sacramento County Superior Court on May 25, 2006.  (Mot. For Security (Doc. No. 13) at

11  6.)

12         The Ninth Circuit has acknowledged the "inherent power of federal courts to

13  regulate the activities of abusive litigants by imposing carefully tailored restrictions under the

14  appropriate circumstances."  De Long v. Hennessey, 912 F.2d 1144, 1146 (9th Cir. 1990)

15  (discussing requirements, pursuant to the All Writs Act,  28 U.S.C. § 1651(a), for issuing an

16  order requiring a litigant to seek permission from the court prior to filing any future suits).  See

17  also Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057-62 (9th Cir. 2007).

18         Local Rule 151(b) provides that "[t]he provisions of Title 3A, part 2, of the

19  California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a

20

21         [7]  In light of plaintiff's failure to address his probability of success in his opposition to
22  BHB's motion and his acknowledgment that he lacks standing to bring this action against BHB,
   the undersigned need not address BHB's additional arguments that plaintiff's causes of action are
   time barred, that BHB owed him no duty of care and that plaintiff's claims are barred by
23  California Civil Code § 47(b).  Nor need the undersigned consider whether plaintiff should be
   granted leave to amend in light of his stated non-opposition to dismissal of his claims against
24  BHB.

25         [8]  In the event that these findings and recommendations are adopted by the assigned
   District Judge, defendant BHB may file a motion for attorney's fees pursuant to California Code
26  of Civil Procedure § 425.16(c) and Local Rule 293.

procedural rule of this Court on the basis of which the Court may order the giving of security, bond, or undertaking, although the power of the court shall not be limited thereby."  California Code of Civil Procedure, Title 3A, part 2, commences with § 391 and defines a "vexatious litigant" as including those persons acting in propria persona who "repeatedly files unmeritorious motions, pleadings, or other papers . . . or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."  CAL. CODE CIV. PROC. § 391(b)(3).  Under subsection (b)(4) of that statute, a vexatious litigant is also a person acting in propria persona who has previously been declared to be a vexatious litigant by a state court in any action based upon substantially similar facts, transaction, or occurrence.

The Ninth Circuit has counseled caution in declaring a plaintiff vexatious.  That court has explained that "orders restricting a persons's access to the courts must be based on adequate justification supported in the record and narrowly tailored to address the abuse perceived."  DeLong, 912 F.2d at 1149.  The Ninth Circuit in DeLong articulated that the following four conditions must be met before the court enters such an order:  (1) plaintiff must be given adequate notice to oppose the order; (2) the court must provide an adequate record for review, listing the pleadings that led the court to conclude that a vexatious litigant order was warranted; (3) the court must make substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) the order must be narrowly tailored.  Id. at 1147-48; see also Molski, 500 F.3d at 1057-58.

To make substantive findings of frivolousness, the district court must consider "both the number and content of the filings as indicia" of the frivolousness of the litigant's claims.  In re Powell, 851 F.2d 427, 431 (9th Cir. 1988).  See also Moy v United States, 906 F.2d 467, 470 (9th Cir. 1990) (a pre-filing "injunction cannot issue merely upon a showing of litigiousness.").  Absent "explicit substantive findings as to the frivolous or harassing nature of the plaintiff's findings," a district court may not issue a pre-filing order.  O'Loughlin v. Doe, 920 F.2d 614, 618 (9th Cir. 1990).

1        Here, although plaintiff has been declared a vexatious litigant in the Sacramento

2  County Superior Court, it does not appear that he has filed any action that a U.S. District Court

3  has dismissed after making a substantive finding of frivolousness or that it was of a harassing

4  nature.  Accordingly, the undersigned declines to recommend the imposition of a vexatious

5  litigant order.  See Molski, 500 F.3d at 1065 n. 8 (noting that a district court is under no

6  obligation to issue a pre-filing order); Smith v. Phoenix Technologies Ltd., No. 11-CV-01479-

7  LHK, 2011 WL 5444700, at *5 (N.D. Cal. Nov. 9, 2011) ("When a district court encounters

8  vexatious litigation, it is under no obligation to issue a pre-filing order."); Shalaby v.

9  Bernzomatic, Civil No. 11cv68 AJB (POR), 2011 WL 4024800, at *11 (S.D. Cal. Sept. 9, 2011)

10  (declining to issue pre-filing order despite plaintiff's "lengthy history" of filing frivolous

11  motions).

12  III.  Gogineni's Motion to Dismiss

13        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

14  of Civil Procedure is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp.

15  Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a

16  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

17  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to

18  allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

19  Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

20  factual content that allows the court to draw the reasonable inference that the defendant is liable

21  for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

22        In determining whether a complaint states a claim on which relief may be granted,

23  the court accepts as true the allegations in the complaint and construes the allegations in the light

24  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

25  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

26  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  See also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In ruling on the motion, the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, defendant Gogineni's motion to dismiss asserts that:  (1) this action is barred by res judicata; (2) plaintiff's first cause of action is barred by the applicable statute of limitations; and (3) plaintiff's claims are precluded under the Rooker-Feldman doctrine.  (MTD (Doc. No. 10) at 1-2.)  Gogineni also asserts in his reply to plaintiff's opposition to the motion to dismiss that this action is barred by the "two-dismissal rule."[9]  (Reply (Doc. No. 55) at 4.)

---

[9]  Because defendant Gogineni raised this argument for the first time in his reply, the undersigned granted plaintiff leave to file a supplemental opposition addressing this argument. (Doc. No. 57 at 2.)  Defendant Gogineni is advised that, in the future, the court may not entertain arguments raised for the first time in a reply brief filed in this action.  See Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1176 & n.4 (9th Cir. 1995) (issues not raised in opening brief may not properly be raised in reply); Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir. 1990) (as a general rule a party may not raise a new issue for the first time in their reply brief).

1        The doctrine of res judicata governs "[t]he preclusive effects of former litigation."

2   Hiser v. Franklin, 94 F.3d 1287, 1290 (9th Cir. 1996) (citing Migra v. Warren City School Dist.

3   Bd. Of Educ., 465 U.S. 75, 77 n.1 (1984)).  "Res judicata applies when 'the earlier suit . . . (1)

4   involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the

5   merits, and (3) involved identical parties or privies.'"  Mpoyo v. Litton ElectroOptical Systems,

6   430 F.3d 985, 987 (9th Cir. 2005) (quoting Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir.

7   2002)).  "Res judicata bars a suit when 'a final judgment on the merits of an action precludes the

8   parties or their privies from relitigating issues that were or could have been raised in that

9   action.'"  ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010)

10  (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

11       Here, defendant Gogineni asserts that the causes of action presented by plaintiff in

12  his pending complaint are the same as the causes of action plaintiff presented in a 2009 action he

13  filed in the Placer County Superior Court, Case No. S-CV-25314.  (MTD (Doc. No. 10) at 9.)

14  Defendant Gogineni contends that the Placer County Superior Court dismissed those claims with

15  prejudice via tentative ruling on May 2, 2012, that plaintiff failed to request oral argument on the

16  tentative ruling and that the tentative ruling therefore became the final order of that court. (Id. at

17  9-10.)  In this regard, defendant Gogineni claims that he prevailed in the Placer County Superior

18  Court action on the merits of the case and thus this action is barred by the doctrine of res

19  judicata.  (Id. at 10.)

20       In the Placer County Superior Court action upon which defendant Gogineni,

21  defendant responded to plaintiff's complaint by filing a motion for an order setting amount of

22  security to be posted by plaintiff pursuant to California Code of Civil Procedure § 391.1.[10]  (RJN

23  (Doc. No. 11-4) at 52.)  California Code of Civil Procedure §§ 391-391.3, allows a state court,

24

25       [10]   In support of his motion to dismiss, defendant Gogineni has filed a request for
    judicial notice of documents filed in various state court actions.  (Doc. No. 11.)  A court may
26  take judicial notice of its own files and documents filed in other courts.  See fn. 6, supra (and
    cases cited therein).

upon a motion and a showing that the plaintiff is a vexatious litigant and has no reasonable

probability of success, to require the plaintiff to post a cash security in order for the litigation to

proceed.

After reviewing the parties' briefing, the Placer County Superior Court

determined that plaintiff was a vexatious litigant and found that there was no reasonable

probability that plaintiff would prevail on any of his alleged causes of action.  (Id. at 53.)

Accordingly, the Placer County Superior Court ordered plaintiff to post a security bond in the

amount of $100,000 by April 13, 2012.  (Id.)  After plaintiff failed to post the security bond the

Placer County Superior Court dismissed plaintiff's complaint "with prejudiced (sic) pursuant to

CCP§391.4"[11] in a tentative ruling that became final after plaintiff failed to request oral

argument.  (RJN (Doc. No. 11-7) at 17.)

"'It is now settled that a federal court must give to a state-court judgment the same

preclusive effect as would be given that judgment under the law of the State in which the

judgment was rendered' under the Constitution's Full Faith and Credit Clause and under 28

U.S.C. § 1738."  Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting Migra v.

Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)).  "To determine the preclusive

effect of a state court judgment, federal courts look to state law."  Intri-Plex Technologies, Inc. v.

Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).  "Under California law, res judicata

precludes a party from relitigating (1) the same claim, (2) against the same party, (3) when that

claim proceeded to a final judgment on the merits in a prior action."  Adam Bros. Farming, Inc.

v. County of Santa Barbara, 604 F.3d 1142, 1148-49 (9th Cir. 2010).

/////

---

[11]  California Code of Civil Procedure § 391.4 provides that:

> When security that has been ordered furnished is not furnished as
> ordered, the litigation shall be dismissed as to the defendant for
> whose benefit it was ordered furnished.

1    A dismissal with prejudice is generally on the merits, and bars a subsequent suit

2 based upon the same cause of action.  Torrey Pines Bank v. Superior Court, 216 Cal. App.3d

3 813, 821 (1989).  However, "a mere statement that a judgment of dismissal is 'with prejudice' is

4 not conclusive.  It is the nature of the action and the character of the judgment that determines

5 whether it is res judicata."  Gagnon Co. v. Nevada Desert Inn, 45 Cal.2d 448, 455 (1955).  See

6 also Nguyen v. Sacramento County, No. CIV S-03-2635 FCD EFB P, 2010 WL 580185, at *2

7 (E.D. Cal. Feb. 12, 2010) (finding prior state court dismissal was not a final judgment on the

8 merits and that "the state court dismissed the action with prejudice does not alter this court's

9 analysis."); Ensher v. Ensher, Alexander & Barsoom, Inc., 187 Cal. App.2d 407, 411 (1961)

10 ("where the dismissal of an action does not purport to go to the merits of the case, the trial court

11 has no authority to include within the judgment of dismissal an order which in effect precludes

12 the plaintiff from instituting another action").

13    In this regard, California law provides that  "[n]o determination made by the court

14 in . . . ruling upon the motion [for order setting security pursuant to CCP § 391.1] shall be . . . a

15 determination of any issue in the litigation or of the merits thereof."  CAL. CODE. CIV. PRO. §

16 391.2.  See also Moran v. Murtaugh Miller Meyer & Nelson, LLP, 40 Cal.4th 780, 786 (2007)

17 ("The grant of a section 391.1 motion does not preclude a trial; it merely requires a plaintiff to

18 post security.").  When security that has been ordered furnished is not furnished as ordered, the

19 litigation shall be dismissed.  See CAL. CODE CIV. PRO. § 391.4; see also Muller v. Tanner, 2 Cal.

20 App.3d 438, 443 fn. 4 (1969) (noting that it is at least questionable whether a dismissal following

21 a vexatious litigant's failure to post security is a judgment on the merits); Ensher, 187 Cal. App.

22 2d at 410-11 ("dismissal with prejudice" entered by court following plaintiff's failure to provide

23 security in shareholder derivative action was not on merits because the statute provides that

24 determinations regarding the furnishing of security is not a determination of the merits).

25    Here, the Placer County Superior Court dismissed the action relied upon by

26 defendant Gogineni for his res judicata argument due only to plaintiff's failure to post the

1   $100,000 security as ordered by the court.  Regardless of the intent of the Placer County Superior

2   Court in dismissing that case, California law provides that such a dismissal does not involve a

3   determination of the merits.  Accordingly, the undersigned finds that the Placer County Superior

4   Court action did not reach a final judgment on the merits for purposes of barring this action

5   under the doctrine of res judicata.  See Nguyen, 2010 WL 580185, at *2; Ensher, 187 Cal.

6   App.2d at 411.

7          Defendant Gogineni next argues that plaintiff's first cause of action must be

8   dismissed as barred by the statute of limitations provided by California Code of Civil Procedure

9   § 338(d).  (MTD (Doc. No. 10) at 11.)  Specifically defendant Gogineni argues that plaintiff's

10  first cause of action had to filed by December 26, 2011, but was not filed until December 27,

11  2011.  (Id.)  In opposing defendant's motion, however, plaintiff noted that December 26, 2011,

12  fell on a court holiday and thus plaintiff had one more day to file this action in a timely fashion

13  and did so.  (Pl.'s Opp.'n (Doc. No. 44) at 4.)  At the July 16, 2012 hearing, counsel for

14  defendant Gogineni conceded that plaintiff's contention was correct.  Accordingly, defendant

15  Gogineni's motion to dismiss on this ground must also be denied.

16         Defendant Gogineni's third argument in support of dismissal is that this action is

17  barred pursuant to the Rooker-Feldman doctrine because plaintiff's federal action is

18  "'inextricably intertwined' with the merits of the decision rendered by the Placer County

19  Superior Court."  (MTD (Doc. No. 10) at 11-12.)

20         The Rooker-Feldman doctrine "stands for the relatively straightforward principle

21  that federal district courts do not have jurisdiction to hear de facto appeals from state court

22  judgments."  Carmona v. Carmona, 603 F.3d 1041, 1050-51 (9th Cir. 2010).  See Dubinka v.

23  Judges of Sup. Ct., 23 F.3d 218, 221 (9th Cir. 1994) ("Federal district courts may exercise only

24  original jurisdiction; they may not exercise appellate jurisdiction over state court decisions.").

25  Under the Rooker-Feldman doctrine, a federal district court is precluded from hearing "cases

26  brought by state-court losers complaining of injuries caused by state-court judgments rendered

1    before the district court proceedings commenced and inviting district court review and rejection

2    of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

3    The Rooker-Feldman doctrine applies not only to final state court orders and judgments, but to

4    interlocutory orders and non-final judgments issued by a state court as well.  Doe & Assoc. Law

5    Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001); Worldwide Church of God v.

6    McNair, 805 F.2d 888, 893 n.3 (9th Cir.1986).

7            The Rooker-Feldman doctrine prohibits "a direct appeal from the final judgment

8    of a state court," Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003), and "may also apply where

9    the parties do not directly contest the merits of a state court decision, as the doctrine prohibits a

10   federal district court from exercising subject matter jurisdiction over a suit that is a de facto

11   appeal from a state court judgment." Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th

12   Cir. 2008) (internal quotation marks omitted).  "A suit brought in federal district court is a 'de

13   facto appeal' forbidden by Rooker-Feldman when 'a federal plaintiff asserts as a legal wrong an

14   allegedly erroneous decision by a state court, and seeks relief from a state court judgment based

15   on that decision.'" Carmona, 603 F.3d at 1050 (quoting Noel, 341 F.3d at 1164).  See also Doe

16   v. Mann, 415 F.3d 1038, 1041 (9th Cir. 2005) ("[T]he Rooker-Feldman doctrine bars federal

17   courts from exercising subject-matter jurisdiction over a proceeding in 'which a party losing in

18   state court' seeks 'what in substance would be appellate review of the state judgment in a United

19   States district court, based on the losing party's claim that the state judgment itself violates the

20   loser's federal rights.'") (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994), cert.

21   denied 547 U.S. 1111 (2006)).

22                      [A] federal district court dealing with a suit that is,
                   in part, a forbidden de facto appeal from a judicial decision of a
23               state court must refuse to hear the forbidden appeal.  As part of that
                   refusal, it must also refuse to decide any issue raised in the suit that
24               is 'inextricably intertwined' with an issue resolved by the state
                   court in its judicial decision.
25

26   Doe, 415 F.3d at 1043 (quoting Noel, 341 F.3d at 1158).  See also Exxon, 544 U.S. at 286 n. 1

1  (stating that "a district court [cannot] entertain constitutional claims attacking a state-court

2  judgment, even if the state court had not passed directly on those claims, when the constitutional

3  attack [is] 'inextricably intertwined' with the state court's judgment") (citing Feldman, 460 U.S.

4  at 482 n. 16)); Bianchi v. Rylaarsdam, 334 F.3d 895, 898, 900 n. 4 (9th Cir. 2003) ("claims

5  raised in the federal court action are 'inextricably intertwined' with the state court's decision

6  such that the adjudication of the federal claims would undercut the state ruling or require the

7  district court to interpret the application of state laws or procedural rules") (citing Feldman, 460

8  U.S. at 483 n. 16, 485).

9          Here, plaintiff filed this federal action before the Placer County Superior Court

10  action was dismissed.  See Exxon, 544 U.S. at 292-93 ("This Court has repeatedly held that 'the

11  pendency of an action in the state court is no bar to proceedings concerning the same matter in

12  the Federal court having jurisdiction.'"); Khanna v. State Bar of Cal., 505 F. Supp.2d 633, 642

13  (N.D. Cal. 2007) ("Rooker-Feldman does not bar jurisdiction simply because there is concurrent

14  state/federal jurisdiction or where normal preclusion rules apply.  The fact that state and federal

15  suits involve overlapping issues or could result in inconsistent factual findings is not sufficient.

16  For Rooker-Feldman to apply, there must be a frontal, not collateral, attack upon the state court

17  judgment.").

18          Moreover, plaintiff's complaint before this court neither seeks relief from the

19  Placer County Superior Court's judgment, nor alleges error on the part of that state court.

20  See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004) ("Rooker-Feldman . . .

21  applies only when the federal plaintiff both asserts as her injury legal error or errors by the state

22  court and seeks as her remedy relief from the state court judgment."); Belinda K. v. County of

23  Alameda, No. 10-CV-05797-LHK, 2011 WL 2690356, at *22 (N.D. Cal. July 8, 2011) ("Because

24  Plaintiff complains of legal injuries caused by the Defendants' actions, rather than by the

25  Superior Court's judgment, her claims are not barred by the Rooker-Feldman doctrine.  As

26  Plaintiff neither seeks relief from the state court's judgment, nor alleges error on the part of the

1   state court, she is not a 'state-court loser' looking to the federal court to second-guess a

2   previously rendered state-court judgment on the merits."); Khanna, 505 F. Supp.2d at 642 ("If the

3   Ninth Circuit's interpretation of Rooker-Feldman in Noel and Kougasian left any doubt, it is now

4   clear after Exxon Mobil and Lance that the Rooker-Feldman doctrine does not apply unless the

5   federal plaintiff seeks to 'overturn an injurious state-court judgment.'").

6           Accordingly, for the reasons stated above, the undersigned finds that this federal

7   action is not barred by the Rooker-Feldman doctrine as argued by defendant Gogineni.

8           Finally, defendant Gogineni argues that plaintiff's action is barred under the

9   "two-dismissal rule" provided by Rule 41(a)(1)(B) of the Federal Rules of Civil Procedure.  In

10  this regard, defendant Gogineni argues that plaintiff "has been subject to dismissal of his claims

11  in all of his preceding 11 other State cases" against defendant Gogineni.  (Reply (Doc. No. 55) at

12  4.)  Specifically, defendant Gogineni points to case number S-CV-25314 filed in the Placer

13  County Superior Court and case number 04-CS-01039, a case filed by plaintiff in the Sacramento

14  County Superior Court, as two cases that have been dismissed and that implicated the "same

15  factual gravamen and legal theories" as this federal action brought by plaintiff.  (Id. at 5.)

16  Defendant Gogineni contends that "given the history of dismissals and judgments of dismissal,"

17  Rule 41(a)(1)(B) "mandates dismissal in any and all events."  (Id.)

18          Rule 41(a)(1)(A) provides that a plaintiff may voluntarily dismiss an action,

19  without a court order, by filing a notice of dismissal or, where the defendant has answered or

20  filed a motion for summary judgment, a stipulation of dismissal signed by all the parties that

21  have appeared in the action.  Rule 41(a)(1)(B) states:

22          (B) Effect.  Unless the notice or stipulation states otherwise, the
            dismissal is without prejudice.  But if the plaintiff previously
23          dismissed any federal- or state-court action based on or including

24  /////

25  /////

26  /////

1   the same claim, a notice of dismissal operates as an adjudication on the merits.[12]

2   This provision is known as the "two-dismissal rule."  See Commercial Space Management

3   Company, Inc. v. The Boeing Co., 193 F.3d 1074, 1076 (9th Cir. 1999).

4           Rule 41(a)(1)(B) adjudication is ripe upon the filing of the third action.  See

5   Commercial Space Management Company, Inc., 193 F.3d at 1080 ("we see no reason why the

6   interests of judicial economy are not well served by deferring resolution of the effect of prior

7   dismissals under the two dismissal rule to the third action, if and when one is filed that is based

8   on or includes the same claim.").  "The term 'voluntary' in Rule 41 means that the party is filing

9   the dismissal without being compelled by another party or the court."  Lake at Las Vegas

10  Investors Group, Inc. v. Pacific Malibu Development Corp., 933 F.2d 724, 726 (9th Cir. 1991).

11  The distinction between "voluntary, or section (a), dismissals and involuntary, or section (b),

12  dismissals" is determined by "which party initiates the dismissal."  See Lake at Las Vegas

13  Investors Group, Inc., 933 F.2d at 727.  "And, while [Rule 41] delineates the bases upon which

14  the defendant may seek an involuntary dismissal, it does not consider the plaintiff's reasons for

15  seeking a voluntary dismissal."  Id.

16          Here, as noted above, Placer County Superior Court Case No S-CV-25314, was

17  not voluntarily dismissed by plaintiff, but was instead dismissed by the court after plaintiff failed

18  to post the ordered security.[13]  Moreover, Sacramento County Superior Court Case No. 04-CS-

19  01039, was also dismissed by the court after plaintiff failed to post the ordered security.  (RJN

20  (Doc. No. 11-1) at 37-38.)  Thus, neither of the cases cited by defendant Gogineni in support of

21

22          [12]  "Although neither the Supreme Court nor the Ninth Circuit has specifically addressed
    the meaning of 'same claims' for the purposes of Rule 41(a)(1)(B), the Ninth Circuit has
23  analogized the Rule 41(a)(1)(B) two dismissal rule to the res judicata inquiry."  Abrahams v.
    Hard Drive Productions, Inc., No. C-12-01006 JCS, 2012 WL 5499853, at *3 (N.D. Cal. Nov.
24  13, 2012).

25          [13]  The basis for defendant Gogineni's argument that this matter is barred by res judicata
    is his assertion that the Placer County Superior Court action resulted in a final determination on
26  the merits.  Accordingly, the undersigned finds counsel's assertion that this action was also
    voluntarily dismissed to be puzzling.

his argument on this issue would qualify as a voluntary dismissal.[14]  Defendant Gogineni has thus failed to established that plaintiff's complaint before this court should be dismissed pursuant to Rule 41's "two dismissal rule."

For all of the reasons set forth above, defendant Gogineni's motion to dismiss should be denied.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendant BHB's June 7, 2012 motion to strike (Doc. No. 32) be granted and defendant BHB be dismissed from this action;

2.  Defendant Gogineni's May 10, 2012 motion to dismiss (Doc. No. 10) be denied;

3.  Defendant Gogineni's May 3, 2012 motion for order setting security (Doc. No. 13) be denied; and

4.  Defendant Gogineni be ordered to respond to the complaint within thirty days after any order adopting these findings and recommendations is filed and served.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are

/////

/////

---

[14]  Given defendant Gogineni's failure to cite even one qualifying voluntary dismissal by plaintiff under Rule 41(a)(1)(B), the Court need not address plaintiff's argument in opposition to dismissal that he did not even discover the causes of action asserted here against defendant Gogineni until 2008, well after many of his state court actions had been dismissed.

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: December 11, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

7  DAD:6
Ddad1\orders.pro se\crowe3438.mts.mtd.f&rs