UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CROWE,<br><br>  Plaintiff,<br><br>  v.<br><br>RAMA GOGINENI, et al.,<br><br>  Defendants. | No. 2:11-cv-3438 JAM DAD PS<br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the court on July 19, 2013, for hearing of defendant Rama Gogineni's motion for judgment on the pleadings. (Doc. No. 76.) Jeff Stone, Esq. appeared for defendant Rama Gogineni. Plaintiff Kelly Crowe appeared on his own behalf. For the reasons set forth below, the undersigned will recommend that defendant's motion be denied.

BACKGROUND

Plaintiff Kelly Crowe, proceeding pro se, commenced this action on December 27, 2011, by filing a complaint and paying the required filing fee. (Doc. No. 1.) In her complaint plaintiff alleged as follows. On February 19, 2000, plaintiff and defendant Rama Gogineni entered into a shareholder agreement in which each party held shares of Cosmic Technologies Corp. ("Cosmic"), a now dissolved California corporation. (Compl. (Doc. No. 1) at 2.[1])

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1

1  Defendant Gogineni was the director, president, secretary, treasurer and majority shareholder of
2  Cosmic.  (Id.)
3       On February 7, 2003, unbeknownst to plaintiff, defendant Gogineni began
4  approving money transfers from Cosmic to Titan Infotech Corp. ("Titan"), a now dissolved
5  California corporation wholly owned by defendant Gogineni.  (Id. at 5.)  By the end of April of
6  2003, however, Cosmic was generating sufficient profits to make distributions to its shareholders.
7  (Id. at 2.)  Gogineni informed plaintiff that a tax professional had advised Gogineni that there
8  were significant tax benefits to making those distributions in the form of salary to plaintiff and
9  Gogineni instead of Cosmic paying formal dividends.  (Id.)  Plaintiff agreed to permit the
10 distributions to be made in the form of unearned salary.  (Id.)
11      On May 8, 2003, Cosmic commenced declaring constructive dividends in the form
12 of unearned salary.  (Id. at 3.)  Around the same time plaintiff and Gogineni began experiencing
13 trouble working together.  (Id.)  Moreover, the constructive dividends paid and "labeled falsely as
14 salary" were raised, lowered or temporally suspended from time to time, the shareholders roles in
15 Cosmic and their hours worked did not warrant the payments received, the payments grossly
16 exceed compensation paid to similarly situated employees and the condition of Cosmic's sales
17 and income did not warrant the payments made.  (Id. at 6.)
18      On June 20, 2003, plaintiff received a letter from Whitney Washburn, an attorney
19 hired by Gogineni, informing plaintiff that Gogineni was contesting plaintiff's title to stock held
20 in Cosmic, was alleging that plaintiff was in breach of the shareholders' agreement and that
21 plaintiff's employment with Cosmic was therefore terminated.  (Id. at 3.)  Plaintiff stopped
22 receiving constructive dividends in the form of unearned salary from Cosmic, although Gogineni
23 continued to receive such dividends through 2005.  (Id. at 5.)
24      In July of 2003, Bullivant Houser Bailey ("BHB") was retained by Cosmic to
25 respond to an application for order directing Cosmic to hold an annual shareholders meeting.  (Id.
26 at 4.)  On August 29, 2003, plaintiff received a letter from BHB informing plaintiff that BHB was
27 retained to serve as Cosmic's corporate counsel, that BHB had determined that plaintiff was a
28 valid shareholder in Cosmic, that Cosmic would be holding an annual shareholders meeting on

1  December 31, 2003, that BHB was aware that Gogineni had retained counsel concerning a
2  pending dispute between the shareholders, that BHB would like to discuss the purchase of
3  plaintiff's shares in Cosmic and that Cosmic's board of directors would consider any dividend
4  distributions at the close of the fiscal year after consultation with Cosmic's accountants. (Id.)
5  BHB also represented Cosmic in an action filed by plaintiff in October of 2003, which concluded
6  in June of 2004. (Id.) On July 27, 2004, BHB sent plaintiff a letter indicating that BHB had
7  again been retained by Cosmic to file an action to quiet title to each shareholder's stock. (Id. at
8  4.)
9  On December 26, 2008, plaintiff discovered the money transfers from Cosmic to
10 Titan approved by Gogineni. (Id. at 5.) Plaintiff alleges that Gogineni also used Cosmic's
11 corporate funds to send money to Kantamaneni Rajani in India, who performed no work for
12 Cosmic and who distributed the money sent abroad to Gogineni's family members. (Id. at 7.)
13 On March 17, 2009, plaintiff wrote Gogineni a letter demanding that Gogineni
14 provide proof that the transactions between Cosmic and Titan were just and reasonable as to
15 Cosmic. (Id. at 5.) On April 1, 2009, plaintiff sent another letter to Gogineni, this one
16 demanding proof that the large and irregular payments to Gogineni from Cosmic labeled as pay
17 were just and reasonable as to Cosmic. (Id. at 6.) Gogineni refused to respond to these letters.
18 (Id.)
19 Based on these allegations, plaintiff instituted this action alleging fraudulent
20 concealment, negligent misrepresentation, breach of fiduciary duty and civil conspiracy against
21 defendant Gogineni and BHB.
22 On May 3, 2012, defendant Gogineni filed a motion to dismiss (Doc. No. 10) and a
23 motion for an order setting amount of security. On June 7, 2012, BHB filed a special motion to
24 strike. (Doc. No. 32.) After hearing argument on defendants' motions, the undersigned issued
25 findings and recommendations on December 12, 2012, recommending that BHB's motion to
26 strike be granted and that BHB be dismissed from this action, and that defendant Gogineni's
27 motion to dismiss and motion for order setting security be denied. (Doc. No. 67.) Those findings
28 /////

and recommendations were adopted by the assigned District Judge on April 11, 2013. (Doc. No. 69.)

On May 10, 2013, defendant Gogineni filed an answer to the complaint, (Doc. No. 75), and the motion for judgment on the pleadings now pending before the court. (Doc. No. 76.) Plaintiff filed his opposition on July 5, 2013. (Doc. No. 89.) Defendant Gogineni filed his reply on July 12, 2013. (Doc. No. 93)

## STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

The same legal standard applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion.[2] Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "'[a] judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" Marshall Naify Revocable Trust v. U.S., 672 F.3d 620, 623 (9th Cir. 2012) (quoting Fajardo v. Cnty. of L.A., 179 F.3d 698, 699 (9th Cir. 1999)). See also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009) ("Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false. MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in

---

[2] Plaintiff argues in his opposition that defendant's motion "was filed prematurely" because defendant filed an amended answer after he had filed the motion for judgment on the pleadings. However, "[i]f a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6)." Dale v. Executive Office of President, 164 F. Supp.2d 22, 24 (D. D.C. 2001). In this regard, "Rules 12(b)(6) and 12(c) are substantively identical." Erickson v. Boston Scientific Corp., 846 F.Supp.2d 1085, 1089 (C.D. Cal. 2011).

favor of that party. Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005).

ANALYSIS

I.  Statute of Limitations

Defendant Gogineni argues the plaintiff's causes of action are barred by the applicable three year statute of limitations set forth in California Code of Civil Procedure § 338(d).[3] In this regard, Gogineni notes that the alleged wrongful conduct occurred between 2000 and 2006, more than five years prior to the filing of this action. (Def.'s Mot. JOTP (Doc. No. 76) at 12.)

"A complaint disclosing on its face that the limitations period has expired in connection with one or more counts is subject to demurrer." Fuller v. First Franklin Financial Corporation, 216 Cal App. 4th 955, ___,163 Cal.Rptr.3d 44, 50 (2013). "The general rule in California is that a 'statute of limitations begins to run when a cause of action accrues, even though the plaintiff is ignorant of the cause of action or of the identity of the wrongdoer.'" M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc., 202 Cal.App.4th 1509, 1531 (2012) (quoting Community Cause v. Boatwright, 124 Cal.App.3d 888, 898 (1981)). "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (2005). See also Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109 (1988) ("The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause."). The plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements." Norgart v. Upjohn Co., 21 Cal.4th 383, 398 (1999). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,

---

[3] Gogineni asserts that although a cause of action for breach of fiduciary duty typically is subject to a four year statute of limitations, where the gravamen of the complaint is fraud, the three year statute of limitations set forth in § 338(d) applies. (Def.'s Mot. JOTP (Doc. No. 76) at 12.)

5

522 F.3d 1049, 1055 (9th Cir. 2008) (quoting <u>V.C. v. Los Angeles Unified School Dist.</u>, 139 Cal. App.4th 499, 516 (2006)).

Here, defendant Gogineni notes that plaintiff in his complaint alleges that plaintiff stated in his July 2, 2004 letter to defendant that plaintiff suspected Gogineni was using his authority over Cosmic to obtain unearned salary and to funnel money to Titan. (Def.'s Mot. JOTP (Doc. No. 76) at 13.) Defendant Gogineni argues that the allegations of the complaint regarding this point establish that plaintiff was aware of his causes of action as of July 2, 2004. (<u>Id.</u> at 13-14.)

Plaintiff argues in his opposition to the pending motion to dismiss that, while he harbored suspicions that Gogineni was engaged in wrongful conduct, he was not aware of facts that would support the causes of action alleged herein until December 26, 2008. (Pl.'s Opp.'n (Doc. No. 89-1) at 12-21.) Plaintiff asserts that defendant responded to his July 2, 2004 letter by providing plaintiff with documents that "omitted the transactions between Cosmic and Titan alleged in the complaint." (<u>Id.</u> at 19.) Plaintiff, nonetheless, continued to investigate the matter and "subpoenaed without success Cosmic's banking records no less than 8 times" before plaintiff finally obtained those records on December 26, 2008. (<u>Id.</u> at 18.) Once obtained, according to plaintiff, those records not only confirmed his suspicions, but also "provided plaintiff with the particularity of who, when, how, to whom, and by what means with respect to the fraud committed necessary to institute" this action. (<u>Id.</u> at 17.)

"Under the delayed discovery rule, the limitations period does not begin to run until a plaintiff discovers or could have discovered through the exercise of reasonable diligence all facts essential to [his] cause of action." <u>Sylve v. Riley</u>, 15 Cal.App.4th 23, 26 (1993). <u>See also</u> <u>Fox</u>, 35 Cal.4th at 815 ("It would be contrary to public policy to require plaintiffs to file a lawsuit at a time when the evidence available to them failed to indicate a cause of action.").

> [T]o overcome an apparent limitations bar, the plaintiff claiming delayed discovery of the facts constituting the cause of action has the burden of setting forth pleaded facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.

6

1   Czajkowski v. Haskell & White, LLP, 208 Cal.App.4th 166, 174-75 (2012).  See also Fox, 35

2   Cal.4th at 809 ("In order to adequately allege facts supporting a theory of delayed discovery, the

3   plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or

4   she could not have reasonably discovered facts supporting the cause of action within the

5   applicable statute of limitations period.").

6           Here, plaintiff alleges in his complaint alleges as follows.  In response to his July

7   2, 2004 letter he received Cosmic's "Financial Statements" for fiscal years 2000, 2001, 2002 and

8   2003 and that those documents "omitted the transactions between Cosmic and Titan."[4]  (Compl.

9   (Doc. No. 1) at 8.)  In 2006, plaintiff sought and obtained Cosmic's "Financial Statements" for

10  fiscal years 2004, 2005 and the first quarter of 2006, and those statements "also omitted the

11  transactions between Cosmic and Titan."  (Id.)  Plaintiff thereafter made several attempts to

12  obtain Cosmic's banking records to determine if those records "disclosed any factual support for

13  Plaintiff's suspicions," but "Gogineni and BHB were able to prevent plaintiff from obtaining"

14  those records.  (Id. at 9.)  Finally, on December 26, 2008, plaintiff obtained Cosmic's banking

15  records and discovered that "[a]s a proximate result of transactions with Titan, Gogineni [had]

16  received" over a million dollars in constructive dividends from Cosmic.  (Id.)

17          It appears plaintiff has pled sufficient facts to show the time and manner of

18  discovery and his inability to have made earlier discovery despite reasonable diligence.  Compare

19  E-Fab, Inc. v. Accountants, Inc. Services, 153 Cal.App.4th 1308, 1324 (2007) ("Given the

20  specificity of the foregoing allegations, we conclude that the factual circumstances of plaintiff's

21  discovery of defendant's wrongdoing are sufficiently asserted to meet this first pleading

22  requirement of the delayed discovery rule."); and Bastian v. County of San Luis Obispo, 199

23  Cal.App.3d 520, 528-29 (1988) ("The survivors' lawsuit gave Bastian a reason to investigate, but

24  it did not put him on notice that he had a cause of action against the County.  To find as a matter

---

[4] As noted above, for purposes of this motion, the court must assume that the allegations found in plaintiff's complaint are true.  See Fox, 35 Cal.4th at 811 ("we must assume to be true Fox's allegations that she did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the Ethicon GIA-type stapler as a cause of her injury until the deposition of Dr. Gladen was taken on August 13, 2001").

of law that Bastian was not diligent because he was unsuccessful in his efforts to discover the truth, would encourage other plaintiffs to file suits against government entities even though a diligent investigation fails to uncover facts that give rise to a cause of action."); with Saliter v. Pierce Brothers Mortuaries, 81 Cal.App.3d 292, 298-99 (1978) ("Notwithstanding plaintiff's conceded knowledge of the above mentioned facts, the complaint fails to allege that he made any efforts to determine the cause of his condition or to investigate damages until the ordinarily applicable statute of limitations had elapsed over a year after the alleged breach.").

Moreover,

> [w]hen a plaintiff reasonably should have discovered facts for purposes of the accrual of a [cause] of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion.

Alexander v. Exxon Mobil, 219 Cal.App.4th 1236, 1251-52 (2013) (quoting Broberg v. Guardian Life Ins. Co. of America, 171 Cal.App.4th 912, 921 (2009). See also Ward v. Westinghouse Canada, Inc., 32 F.3d 1405, 1408 (9th Cir. 1994) ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question."); Bastian, 199 Cal.App.3d at 527 ("Once belated discovery is pleaded, the issue of whether plaintiff exercised reasonable diligence in discovering the negligent cause of the injury is a question of fact.").

Here, because plaintiff has properly pled belated discovery, the determination of when he discovered, or should have discovered, the facts for purposes of the accrual of his causes of action is a question of fact. In light of the allegations found in the complaint, the facts properly subject to judicial notice and the many unresolved factual issues concerning plaintiff's discovery of his causes of action - for example, what records plaintiff obtained, when he obtained them and what they revealed - the undersigned cannot find that the allegations found in plaintiff's complaint support only one reasonable conclusion as to when his causes of action accrued.[5]

---

[5] Defendant Gogineni has filed multiple, voluminous, requests for judicial notice which he refers to generally in support of his motion for judgment on the pleadings and in reply. The undersigned has reviewed those documents and finds that they do not alter the finding that there is more than one reasonable conclusion as to when plaintiff's causes of action accrued.

II. <u>Derivative Causes of Action</u>

Defendant Gogineni also argues that plaintiff's causes of action for fraudulent concealment, negligent misrepresentation and breach of fiduciary duty are derivative in that they "legally and factually belong[] to Cosmic and inures to, and for its benefit." (Def.'s Mot. JOTP (Doc. No. 76) at 16.) Defendant also contends that plaintiff has failed to comply with California Corporations Code § 800, which requires a shareholder bringing a derivate action to "allege efforts to secure from the board such action as plaintiff desires . . . ." (<u>Id.</u> at 18.) Finally, defendant argues that because these causes of action are derivative, Cosmic must be named as a party to this action. (<u>Id.</u> at 19.)

A shareholder may bring one of two types of actions against the corporation, "a direct action filed by the shareholder individually . . . for injury to his or her interest as a shareholder" or "a derivative action filed on behalf of the corporation for injury to the corporation . . . ." <u>Schuster v. Gardner</u>, 127 Cal.App.4th 305, 311-12 (2005). An action is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." <u>Jones v. H. F. Ahmanson & Co.</u>, 1 Cal.3d 93, 106-07 (1969). <u>See</u> also <u>Bader v. Anderson</u>, 179 Cal.App.4th 775, 793 (2009) ("derivative suit is one in which the shareholder seeks redress of the wrong to the corporation").

With respect to a derivate suit, California Corporations Code § 800(b) provides:

> No action may be instituted or maintained in right of any domestic ... corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist:
>
> (1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, or the holder of voting trust certificates at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares or voting trust certificates thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of; provided, that any shareholder who does not meet these requirements may nevertheless be allowed in the discretion of the court to maintain the action on a preliminary showing to and determination by the court, by motion and after a hearing, at which the court shall consider such evidence, by affidavit or testimony, as it deems material, that (i) there is a strong prima facie case in favor of the claim asserted on behalf of the

corporation, (ii) no other similar action has been or is likely to be instituted, (iii) the plaintiff acquired the shares before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains, (iv) unless the action can be maintained the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty, and (v) the requested relief will not result in unjust enrichment of the corporation or any shareholder of the corporation; and

(2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and further alleges that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.[6]

Pursuant to § 800, in order for a shareholder to bring a derivative suit on behalf of the corporation, he must allege 'with particularity' either (1) that he made a demand on the board of directors, which the board wrongfully refused, or (2) that such a demand would have been futile.'" Shields v. Singleton, 15 Cal.App.4th 1611, 1616-17 (1993).  However, "[w]hile it is the general rule that in a derivative action the plaintiff must plead a demand upon and refusal by the

---

[6] The demand requirement under federal law is embodied in Rule 23.1 of the Federal Rules of Civil Procedure, which provides:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.  The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if, necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.  The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

10

directors to act, it is equally well settled that such demand and refusal need not be alleged if the facts pleaded demonstrate such a demand would have been futile." Reed v. Norman, 152 Cal.App.2d 892, 898 (1957). "Without question, futility is demonstrated under California's substantive law where the directors are involved or not disinterested in the actions for which plaintiff seeks relief." Country Nat. Bank v. Mayer, 788 F. Supp. 1136, 1144-45 (E.D. Cal. 1992). See also Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 102 (1991) ("demand typically is deemed to be futile when a majority of the directors have participated in or approved the alleged wrongdoing").

Here, in his complaint plaintiff alleges that defendant Gogineni "was the director, president, secretary, and treasurer" of Cosmic at the time of the alleged wrongful conduct. (Compl. (Doc. No. 1) at 2.) Moreover, the complaint alleges that while acting as Cosmic's director, Gogineni engaged in fraudulent and conspiratorial conduct. (Id. at 7, 17.) "Certainly, no demand is necessary when conspiracy, fraud or criminal conduct of the defendants is charged." Reed, 152 Cal.App.2d at 898. See also In re First Capital Holdings Corp., 146 B.R. 7, 12 (Bkrtcy. C.D. Cal. 1992) ("No demand is necessary when the complaint charges specific instances of conspiracy, fraud, or criminal conduct of the directors or insiders of the corporation."); Gottesfeld v. Richmaid Ice Cream Co., 115 Cal.App.2d 854, 860 (1953) ("But the complaint alleges that the conduct complained of was the result of a conspiracy among a majority of the directors with others and it is settled corporation law that where a demand upon the directors for corporate action would be useless a stockholder may bring a derivative action without making such demand.").

Moreover,

> California courts "have often recognized that majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority."

Jara v. Suprema Meats, Inc., 121 Cal.App.4th 1238, 1253 (2004) (quoting H. F. Ahmanson & Co., 1 Cal.3d at 108). A minority shareholder may "bring a personal action alleging 'a majority

11

1  stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the majority
2  stockholders retaining a disproportionate share of the corporation's ongoing value.'" Jara, 121
3  Cal. App.4th at 1257-58 (quoting Pareto v. F.D.I.C., 139 F.3d 696, 699-700 (9th Cir. 1998)). See
4  also In re Bangerter, 106 B.R. 649, 653 (Bkrtcy. C.D. Cal. 1989) ("The Ahmanson court
5  recognized dual injuries to shareholders and the corporation from a majority shareholder's breach
6  of fiduciary duties. It, therefore, allowed a minority shareholder to assert an individual claim
7  even though the corporation suffered harm from the same acts. The Smith and Crain decisions
8  support this interpretation of Ahmanson. Accordingly, plaintiff has standing under California law
9  to assert individually his claims against debtor in this proceeding."); Smith v. Tele-
10 Communications, Inc., 134 Cal. App.3d 338, 343 (1982) ("the gravamen of the causes of action is
11 injury to Smith as the only minority shareholder. Smith suffered sufficient injury to bring this
12 action in his individual capacity."); Crain v. Electronic Memories & Magnetics Corp., 50 Cal.
13 App.3d 509, 522 (1975) ("If the minority shareholders in Jones suffered individual injury, the
14 minority shareholders in the instant case surely suffered injury which entitled them to bring suit in
15 their individual capacities.")

         In light of these legal principles, defendant's arguments fail.

III.    Civil Conspiracy

         Defendant Gogineni next argues that plaintiff's cause of action for civil conspiracy is barred because that cause of action "is based on the underlying torts (fraud, misrepresentation, breach of fiduciary duty) that are without merit" because those underlying torts are barred by the statute of limitations. (Def.'s Mot. JOTP (Doc. No. 76) at 19.) For the reasons already set forth above, defendant's statute of limitations argument fails.

         Defendant also argues that because his alleged co-conspirator, BHB, has been dismissed from this action, "the very nature of a conspiracy" has been severed. (Id. at 19-20.)

         As one court has observed in rejecting a similar argument,

> [d]efendant apparently misperceives the effect of a civil conspiracy allegation and its relation to a dismissal of one of the parties. The pleading of civil conspiracy is merely a procedural method of joining defendants and is superfluous when, as here, concurrent or successive acts are alleged, unless the plaintiff cannot show or

> prove each defendant committed a wrongful act or some part of it. The only significance of a civil conspiracy allegation is that it renders each participant responsible as a contributory tortfeasor whether or not he actually committed the wrongful act. Contributory wrongdoers are jointly and severally liable for the same damage. Thus, the effect of dismissal of one of the contributory tortfeasors is the same as that attending the simple joinder of defendants in a single action without benefit of the procedural conspiracy allegation.

Barney v. Aetna Casualty & Surety Co., 185 Cal.App.3d 966, 983 (1986). See also Klistoff v. Superior Court, 157 Cal.App.4th 469, 479 (2007) ("The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy, and (2) damage to plaintiff resulting from an act or acts done in furtherance of the common design. The existence of a civil conspiracy makes each participant in the wrongful act responsible as a joint tortfeasor for all damages resulting from the wrong, whether or not a participant was a direct actor and regardless of the degree of his activity."). Thus, the "dismissal, with or without prejudice, of one of several joint tortfeasors does not release the others." Barney, 185 Cal. App.3d at 983.

## CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that defendant Gogineni's motion for judgment as a matter of law filed May 10, 2013 (Doc. No. 76), be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 26, 2013

DAD:6
Ddad1\orders.pro se\crowe3438.jotp.f&rs.docx

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE