1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KELLY CROWE,                              No.  2:11-cv-3438 JAM DAD PS

12              Plaintiff,

13         v.                                   FINDINGS AND RECOMMENDATIONS

14    RAMA GOGINENI, et al.,

15              Defendants.

16

17              This matter came before the court on July 19, 2013, for hearing of defendant

18    Bullivant Houser Bailey's motion for attorney fees and costs.  (Dkt. No. 70.)  Attorney Kate

19    Kimberlin appeared telephonically for defendant Bullivant Houser Bailey.  Plaintiff Kelly Crowe

20    appeared on his own behalf.  For the reasons set forth below, the undersigned will recommend

21    that defendant's motion be granted in part and denied in part.

22                                    BACKGROUND

23              Plaintiff Kelly Crowe, proceeding pro se, commenced this action on December 27,

24    2011, by filing a complaint and paying the required filing fee.  (Dkt. No. 1.)  In his complaint

25    plaintiff alleged as follows.  On February 19, 2000, plaintiff and defendant Rama Gogineni

26    entered into a shareholder agreement in which each party held shares of Cosmic Technologies

27    /////

28    /////

1

Corp. ("Cosmic"), a now dissolved California corporation.  (Compl. (Dkt. No. 1) at 2.[1])

Defendant Gogineni was the director, president, secretary, treasurer and majority shareholder of

Cosmic.  (Id.)

On February 7, 2003, unbeknownst to plaintiff, defendant Gogineni began

approving money transfers from Cosmic to Titan Infotech Corp. ("Titan"), a now dissolved

California corporation wholly owned by defendant Gogineni.  (Id. at 5.)  By the end of April of

2003, however, Cosmic was generating sufficient profits to make distributions to its shareholders.

(Id. at 2.)  Gogineni informed plaintiff that a tax professional had advised Gogineni that there

were significant tax benefits to making those distributions in the form of salary to plaintiff and

Gogineni instead of Cosmic paying formal dividends.  (Id.)  Plaintiff agreed to permit the

distributions to be made in the form of unearned salary.  (Id.)

On May 8, 2003, Cosmic commenced declaring constructive dividends in the form

of unearned salary.  (Id. at 3.)  Around the same time plaintiff and Gogineni began experiencing

trouble working together.  (Id.)  Moreover, the constructive dividends paid and "labeled falsely as

salary" were raised, lowered or temporally suspended from time to time, the shareholders roles in

Cosmic and their hours worked did not warrant the payments received, the payments grossly

exceed compensation paid to similarly situated employees and the condition of Cosmic's sales

and income did not warrant the payments made.  (Id. at 6.)

On June 20, 2003, plaintiff received a letter from Whitney Washburn, an attorney

hired by Gogineni, informing plaintiff that Gogineni was contesting plaintiff's title to stock held

in Cosmic, was alleging that plaintiff was in breach of the shareholders' agreement and that

plaintiff's employment with Cosmic was therefore terminated.  (Id. at 3.)  Plaintiff stopped

receiving constructive dividends in the form of unearned salary from Cosmic, although Gogineni

continued to receive such dividends through 2005.  (Id. at 5.)

In July of 2003, defendant Bullivant Houser Bailey ("BHB") was retained by

Cosmic to respond to an application for order directing Cosmic to hold an annual shareholders

---

[1]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
system and not to page numbers assigned by the parties.

meeting.  (Id. at 4.)  On August 29, 2003, plaintiff received a letter from BHB informing plaintiff that BHB was retained to serve as Cosmic's corporate counsel, that BHB had determined that plaintiff was a valid shareholder in Cosmic, that Cosmic would be holding an annual shareholders meeting on December 31, 2003, that BHB was aware that Gogineni had retained counsel concerning a pending dispute between the shareholders, that BHB would like to discuss the purchase of plaintiff's shares in Cosmic and that Cosmic's board of directors would consider any dividend distributions at the close of the fiscal year after consultation with Cosmic's accountants. (Id.)  BHB also represented Cosmic in an action filed by plaintiff in October of 2003, which concluded in June of 2004.  (Id.)  On July 27, 2004, BHB sent plaintiff a letter indicating that BHB had again been retained by Cosmic to file an action to quiet title to each shareholder's stock. (Id. at 4.)

On December 26, 2008, plaintiff discovered the money transfers from Cosmic to Titan approved by Gogineni.  (Id. at 5.)  Plaintiff alleges that Gogineni also used Cosmic's corporate funds to send money to Kantamaneni Rajani in India, who performed no work for Cosmic and who distributed the money sent abroad to Gogineni's family members.  (Id. at 7.)

On March 17, 2009, plaintiff wrote Gogineni a letter demanding that Gogineni provide proof that the transactions between Cosmic and Titan were just and reasonable as to Cosmic.  (Id. at 5.)  On April 1, 2009, plaintiff sent another letter to Gogineni, this one demanding proof that the large and irregular payments to Gogineni from Cosmic labeled as pay were just and reasonable as to Cosmic.  (Id. at 6.)  Gogineni refused to respond to these letters. (Id.)

Based on these allegations, plaintiff instituted this action alleging fraudulent concealment, negligent misrepresentation, breach of fiduciary duty and civil conspiracy against defendants Gogineni and BHB.  On June 7, 2012, BHB filed a special motion to strike, asserting that plaintiff's causes of action against BHB constituted a Strategic Lawsuit Against Public Participation, ("SLAPP"), in violation of California Code of Civil Procedure § 425.16, California's anti-SLAPP statute.  (Dkt. No. 32.)  That same day BHB also filed a motion for order setting security, (Dkt. No. 26), and a motion to dismiss.  (Dkt. No. 30.)  On August 17, 2012,

1  plaintiff filed an opposition to BHB's motion to strike, (Dkt. No. 46), and a statement of non-

2  opposition to BHB's motion to dismiss.  (Dkt. No. 47.)

3        In light of plaintiff's statement of non-opposition, on September 7, 2012, the

4  undersigned issued an order granting BHB's motion to dismiss.  (Dkt. No. 57.)  On December 12,

5  2012, the undersigned issued findings and recommendations recommending that BHB's special

6  motion to strike be granted.  (Dkt. No. 67.)  Those findings and recommendations were adopted

7  by the assigned District Judge on April 11, 2013.  (Dkt. No. 69.)

8        On May 9, 2013, BHB filed the motion for award of attorneys' fees and costs now

9  pending before the court, seeking an award of $33,745 in attorneys' fees and $3,650.13 in costs,

10  for a total award of $37,395.13.  (Dkt. No. 70.)  Plaintiff filed his opposition to that motion on

11  July 5, 2013, (Dkt. No. 89), and BHB filed a reply on July 12, 2013.  (Dkt. No. 92.)  The matter

12  came for hearing before the undersigned on July 19, 2013.  (Dkt. No. 98.)  Thereafter, in response

13  to the court's instruction, BHB filed a supplemental memorandum on July 26, 2013, (Dkt. No.

14  97), to which plaintiff filed a reply on August 5, 2013.  (Dkt. No. 99.)

15  STANDARDS

16        An award of attorneys' fees to a prevailing party on a special motion to strike is

17  mandatory under state law.  CAL. CIV. PROC. CODE § 425.16(c); Ketchum v. Moses, 24 Cal.4th

18  1122, 1131 (Cal. 2001).  Fees should only be awarded for work reasonably related to the special

19  motion to strike brought under the anti-SLAPP statute.  See, e.g., Christian Research Inst. v.

20  Ulnar, 165 Cal.App.4th 1315, 1320 (2008).  Fees are also recoverable for the reasonable time

21  spent seeking an award of statutory attorneys' fees.  Ketchum, 24 Cal.4th at 1141.

22        "Although an award of attorney fees is mandatory under the anti-SLAPP statute,

23  the amount of such fees is discretionary."  Kearney v. Foley and Lardner, 553 F.Supp.2d 1178,

24  1184 (S.D. Cal. 2008).  "The reasonableness of attorney fees is within the discretion of the trial

25  court, to be determined from a consideration of such factors as the nature of the litigation, the

26  complexity of the issues, the experience and expertise of counsel and the amount of time

27  involved."  Wilkerson v. Sullivan, 99 Cal.App.4th 443, 448 (2002).  See also Russell v. Foglio,

28  /////

4

1   160 Cal.App.4th 653, 661 (2008) ("The trial court possesses personal expertise in the value of the
2   legal services rendered in the case before it.").

3       Fee awards under California's anti-SLAPP statute are calculated using the
4   "lodestar" approach.  See Ketchum v. Moses, 24 Cal.4th 1122, 1136 (Cal. 2001) ("we are
5   persuaded that the lodestar adjustment approach should be applied to fee awards under Code of
6   Civil Procedure section 425.16"); Cabral v. Martins, 177 Cal.App.4th 471, 491 (2009) ("The
7   amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in
8   accordance with the familiar 'lodestar' method.").  "The 'lodestar' is calculated by multiplying
9   the number of hours the prevailing party reasonably expended on the litigation by a reasonable
10  hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  See also Serrano
11  v. Preist, 20 Cal.3d 25, (Cal. 1977) ("Fundamental to its determination and properly so was a
12  careful compilation of the time spent and reasonable hourly compensation of each attorney and
13  certified law student involved in the presentation of the case.").  The lodestar calculation "may be
14  adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions
15  involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the
16  litigation precluded other employment by the attorneys, (4) the contingent nature of the fee
17  award." Ketchum, 24 Cal.4th at 1132.

18                                ANALYSIS

19  I.      Reasonable Hourly Rates

20          Defendant seeks compensation for the hours expended on defendant's special
21  motion to strike by attorneys Jessica MacGregor and Kate Kimberlin.  (Ex. A, Kimberlin Decl.
22  (Dkt. No. 71-1) at 16.)  Defendant asserts that the rates charged by defendant's attorneys are
23  "typical of, if not lower than, those rates charged by other legal malpractice defense attorneys in
24  the San Francisco Bay Area."  (Fee Mot. (Dkt. No. 70) at 10.)

25          However, "[t]he reasonable hourly rate is that prevailing in the community for
26  similar work." PLCM Group v. Drexler, 22 Cal.4th 1084, 1095 (Cal. 2000).  See also Gates v.
27  Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) ("the general rule is that the rates of attorneys
28  practicing in the forum district, here the Eastern District of California-Sacramento, are used"); In

1   re Tobacco Cases I, 216 Cal.App.4th 570, 582 (2013) ("Generally, the reasonable hourly rate

2   used for the lodestar calculation is that prevailing in the community for similar work.'"); Rey v.

3   Madera Unified School Dist., 203 Cal.App.4th 1223, 1241 (2012) (same).  Accordingly, the court

4   must determine the reasonable hourly rate prevailing in this community for similar work.

5            Attorney Jessica MacGregor has submitted a declaration stating that she has

6   practiced law for nearly twenty years, has served as the lead partner in charge of many litigation

7   matters, including this case, and has frequently filed special motions to strike.  (MacGregor Decl.

8   (Dkt. No. 72) at 1.)  Plaintiff seeks a rate of $400 per hour for the time expended by attorney

9   MacGregor.

10           The court finds that the reasonable hourly rate prevailing in this community for an

11   attorney of similar experience as Ms. MacGregor is $350 per hour.  See Joe Hand Promotions,

12   Inc. v. Albright, No. CIV. 2:11-2260 WBS CMK, 2013 WL 4094403, at *2 (E.D. Cal. Aug. 13,

13   2013) (finding $350 per hour reasonable rate for attorney with twenty years of experience);

14   Broadcast Music Inc. v. Antigua Cantina & Grill, LLC, No. 2:12-cv-1196 KJM DAD, 2013 WL

15   2244641, at *2 (E.D. Cal. May 21, 2013) (finding $275 per hour reasonable rate for attorney with

16   twenty years of experience); Jones v. County of Sacramento, No. CIV S-09-1025 DAD, 2011 WL

17   3584332, at *9 (E.D. Cal. Aug. 12, 2011) (finding rate of $350 per hour reasonable for attorney

18   with over twenty years of experience).

19           Attorney Kate Kimberlin has submitted a declaration establishing that she has five

20   years of experience and served as "the associate on the case."  (Kimberlin Decl. (Dkt. No. 71) at

21   2.)  Plaintiff seeks a rate of $250 per hour for the time expended by attorney Kimberlin.  The

22   court concludes that the prevailing rate in this community for similar work as that performed by

23   attorney Kimberlin is $225 per hour.  See Gauchat-Hargis v. Forest River, Inc., No. 2:11-cv-2737

24   KJM EFB, 2013 WL 4828594, at *10 (E.D. Cal. Sept. 9, 2013) (finding $200 per hour to be

25   reasonable rate for junior associate); Jones v. County of Sacramento, No. CIV S-09-1025 DAD,

26   2011 WL 3584332, at *10 (E.D. Cal. Aug. 12, 2011) (finding $250 per hour to be a reasonable

27   rate for an attorney with twelve years of experience).

28   /////

1    Defendant also seeks compensation for hours expended by John K. McDonough, a

2    paralegal, at a rate of $150 per hour.  (MacGregor Decl. (Dkt. No. 72) at 2.)  The undersigned

3    finds that to be a reasonable hourly rate for similar work performed in this community.  See Jones

4    v. County of Sacramento, No. CIV S-09-1025 DAD, 2011 WL 3584332, at *9 (E.D. Cal. Aug.

5    12, 2011) ("judges of this court have found $150 an hour to be a reasonable rate for the services

6    of a paralegal in similar civil rights litigation"); Beecham v. City of West Sacramento, No. Civ.

7    S-07-1115 JAM EFB, 2009 WL 3824793, at *4 (E.D. Cal. 2009) ("As for the market rates

8    requested for the work performed by the paralegals ($150 per hour) and law clerks ($125 per

9    hour), the Court finds the rates are reasonable.").

10   II.    Hours Expended

11   According to the billing records submitted in support of defendant's motion for

12   attorneys' fees, prior to the court's ruling on the special motion to strike, 157.4 hours of attorney

13   and paralegal time was expended defending this action.  (Kimberlin Decl., Ex. A (Dkt. No. 71-1)

14   at 13, 16.)  According to defendant's counsel, only "14%" of those hours "are attributable to tasks

15   that were not required to prepare the Anti-SLAPP Motion," or roughly 22 hours.  (Fee Mot. (Dkt.

16   No. 70) at 6; Kimberlin Decl. (Dkt. No. 71) at 2-3.)

17   However, in light of the circumstances of this case and the experience of

18   defendant's attorneys, and having reviewed defendant's special motion to strike, the undersigned

19   finds that 135.4 hours of time expended on that motion to be unreasonable.  In this regard,

20   defendant's attorneys have established that they are experienced litigators who have previously

21   brought special motions to strike in other actions.  Moreover, although counsel purports to have

22   expended nearly all their hours in pursuit of the special motion to strike, presumably counsel

23   could have lessened the number of hours expended on that motion to strike by making use of the

24   work expended on their motion to dismiss or their motion for order setting security.[2]

25   /////

26

27   _____

[2]  The undersigned finds the vast disparity in the number of hours expended on the special motion
28   to strike in comparison to the combined number of hours allegedly expended on defendant's
     motions to dismiss and for an order setting security to be curious.

1    Instead, having considered the nature of this action, defendant's motion and the

2    experience of defendant's attorneys, the undersigned finds that 75 hours of attorney time would

3    be a reasonable number of hours to have expended on the special motion to strike in question.

4    See Plevin v. City and County of San Francisco, No. 11-cv-2359 MEJ, 2013 WL 2153660, at *8

5    (N.D. Cal. May 16, 2013) (finding 71.5 hours of attorney time expended on anti-SLAPP motion

6    reasonable); Smith v. Payne, No. C 12-1732 DMR, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15,

7    2013) (finding 78.5 hours of attorney time expended on anti-SLAPP motion and fee motion to be

8    reasonable); Moreau v. Daily Independent, No. 1:12-CV-1862 LJO JLT, 2013 WL 796621, at *2-

9    3  (E.D. Cal. Mar. 4, 2013) (finding anti-SLAPP motion filed against pro se plaintiff "should take

10   no more than 40 hours" for experienced counsel); Minichino v. First California Realty, No. C-11-

11   5185 EMC, 2012 WL 6554401, at *5 (N.D. Cal. Dec. 14, 2012) ("Defendants have submitted

12   billing records . . . indicating that they spent a total of 27.4 hours on the motions to strike,

13   dismiss, and the instant fee motion."); Maughan v. Google Tech., Inc., 143 Cal.App.4th 1242,

14   1249 (2006) (affirming trial court's determination that a reasonable time spent on the anti-SLAPP

15   motion and the motion for fees and costs is approximately 50 hours).

16   III.    Lodestar

17   According to the billing records submitted in support of defendant's motion, of the

18   total number of hours expended in defending this action, roughly fifty percent of the time

19   expended on the motion was that of attorney Kimberlin, twenty percent was that of attorney

20   MacGregor and thirty percent was expended by paralegal McDonough.  (Kimberlin Decl., Ex. A

21   (Dkt. No. 71-1) at 16.)  The undersigned will apportion those same percentages to the 75 hours of

22   time found to be reasonable.

23   Accordingly, applying the analysis set forth above to defendant's motion, the

24   undersigned finds that defendant is entitled to 37.5 hours a rate of $225 per hour ($8,437.50) for

25   attorney Kimberlin, 15 hours at a rate of $350 per hour ($5,250) for attorney MacGregor and 22.5

26   /////

27   /////

28   /////

8

1    hours at a rate of $150 per hour ($3,375) for paralegal McDonough, for a total Lodestar of

2    $17,062.50.[3]

3    IV.    Costs

4          Defendant's motion also seeks the award of costs.  In this regard, defendant's

5    counsel asserts that they incurred $4,244.34 in total costs "attributable to the efforts associated

6    with the three motions."  (Fee Mot. (Dkt. No. 70) at 6.)  In calculating the costs attributable only

7    to defendant's special motion to strike, counsel proposes that "[a]ssuming the costs . . . are split"

8    consistent with defendant's assertion that "less than 14% of the overall efforts were dedicated

9    exclusively to the drafting of the motion to dismiss and motion for security," than "the total costs

10   incurred by BHB in bringing the Anti-Slapp Motion are $3,650.13."  (Id. at 6-7.)

11          It is true that a prevailing defendant on a special motion to strike is entitled to an

12   award of costs.  CAL. CODE CIV. PRO. § 425.16.  However, "[t]he Court must have 'substantial

13   evidence' to support the fee award."  Kearney, 553 F.Supp.2d at 1185 (quoting Macias v.

14   Hartwell, 55 Cal.App.4th 669, 676 (1997)).  Moreover, the prevailing defendant "bears the

15   burden" of establishing entitlement to the award and "the court may require" the defendant "to

16   produce records sufficient to provide a proper basis for determining" the award.  Christian

17   Research Institute v. Alnor, 165 Cal.App.4th 1315, 1320 (2008).

18          Here, the undersigned finds defendant's request for costs to be speculative and

19   without sufficient evidentiary support.  Defendant has not submitted copies of receipts and bills,

20   but instead simply provided a billing report from defendant's attorneys' firm.  Nor has defendant

21   isolated and itemized those costs attributable to the special motion to strike, but has instead

22   arrived at the amount of costs sought by supposition.  See Jadwin v. County of Kern, 767

23   F.Supp.2d 1069, 1107 (E.D. Cal. 2011) ("It is not incumbent on the Court or opposing counsel to

24   isolate, itemize, break down, and attempt to categorize by legal activity Plaintiff's counsel's

25   billing records.").

26   /////

27   _____

28   [3]  Defendant "is not seeking a multiplier of its fees" (Fee Mot. (Dkt. No. 70) at 6) and the
     undersigned finds no reason to recommend an adjustment to the Lodestar.

1    Accordingly, the undersigned will recommend that defendant's request for costs be

2   denied without prejudice to defendant filing a renewed bill of costs providing substantial evidence

3   and records sufficient to provide a proper basis for determining the precise amount of costs

4   incurred in bringing defendant's special motion to strike.  Defendant's filing should also itemize

5   the costs claimed and be supported by a memorandum of costs and an affidavit of counsel that the

6   costs claimed are allowable by law, are correctly stated, and were necessarily incurred.  See Local

7   Rule 292.

8                                                    CONCLUSION

9    Accordingly, IT IS HEREBY RECOMMENDED that:

10    1.  Defendant's May 9, 2013 motion for attorneys' fees (Dkt. No. 70) be granted;

11    2.  Defendant be awarded $17,062.50 in attorneys' fees; and

12    3.  Defendant's May 9, 2013 motion for costs (Dkt. No. 70) be denied without

13   prejudice.

14    These findings and recommendations are submitted to the United States District

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16   days after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19   shall be served and filed within seven days after service of the objections.  The parties are advised

20   that failure to file objections within the specified time may waive the right to appeal the District

21   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22   Dated:  January 10, 2014

23

24   _____

25   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE
     DAD:6
26   Ddad1\orders.pro se\crowe3438.attyfees.f&rs.docx

27

28

                                                    10