UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CROWE,<br><br>        Plaintiff,<br><br>    v.<br><br>RAMA GOGINENI,<br><br>        Defendant. | No. 2:11-cv-3438-EFB<br><br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter proceeded to a bench trial on January 25, 2016 on plaintiff's claims against defendant Rama Gogineni for fraudulent concealment, negligent misrepresentation, and breach of fiduciary duty.[1] Plaintiff appeared pro se; defendant made no appearance.[2] Having carefully reviewed the evidence and the arguments presented at trial and in plaintiff's written submissions, the court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("Rule") 52.

/////

/////

---

[1] This case action was reassigned to the undersigned based on the consent of the parties. ECF No. 133; *see also* E.D. Cal. L.R. 305; 28 U.S.C. § 636(b)(1).

[2] As explained in greater detail below, Mr. Gogineni abandoned his defense of this case. Despite his absence, the court declined to strike his answer and enter his default but instead set the matter for a trial to enable plaintiff to present his proof as to the merits.

1

I.	Procedural History

Plaintiff Kelly Crowe, proceeding pro se, filed this action on December 27, 2011, alleging claims against defendants Rama Gogineni and the law firm Bullivant Houser Bailey ("BHB") for (1) fraudulent concealment, (2) negligent misrepresentation, (3) breach of fiduciary duty, and (4) civil conspiracy.[3]  ECF No. 1.  Mr. Gogineni moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 10), and BHB moved to dismiss pursuant to 12(b)(6) (ECF No. 30) and to strike the complaint under California's anti-SLAPP statute (ECF No. 32).  BHB's motions were granted and it was dismissed from this action.  ECF Nos. 57, 67, 69.  Gogineni's motion to dismiss was denied (ECF Nos. 67, 69), and he subsequently filed an answer to the complaint (ECF No. 75) and moved for judgment on the pleadings pursuant to Rule 12(c) (ECF No. 76).  That motion was also denied.  ECF Nos. 101, 107.

However, prior to resolution of the Rule 12(c) motion, Gogineni's attorney of record moved to withdraw as counsel, claiming that Gogineni breached their fee agreement and was unwilling to substantially cooperate with counsel.  ECF No. 102.  The motion was granted on April 21, 2014, leaving Gogineni *in propria persona*.  ECF No. 109.

On May 9, 2014, the court continued a previously set Status (Pretrial Scheduling) Conference to June 20, 2014.  ECF No. 112.  All parties were ordered to appear at the conference, and Gogineni was directed to file and serve a status report on or before June 13, 2014.  *Id.*  He did not comply with that order, nor did he appear at the pretrial scheduling conference.  *See* ECF No. 115.  Plaintiff subsequently filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37, which was noticed for hearing on May 29, 2015.  ECF No. 122.  In violation of Local Rule 251(e), Mr. Gogineni failed to timely file an opposition or statement of non-opposition and did not appear at the noticed hearing.  *See* ECF No. 125; *see also* E.D. Cal. L.R. 251(e) (requiring a responding party to file an opposition to a motion for sanctions under Federal Rule of Civil Procedure 37 no later than 7 days before the hearing date).

---

[3] Although the complaint alleged a claim for civil conspiracy (ECF No. 1 at 17), plaintiff's trial brief did not address this claim (*see generally* ECF No. 139).  Furthermore, he did not present any evidence at trial to support a conspiracy claim.  Accordingly, the court finds that plaintiff has abandoned his civil conspiracy claim, and consequently that claim is dismissed.

Thereafter, the court set a pretrial conference for December 4, 2015, and directed the parties to file their pretrial statements by November 30, 2015. ECF Nos. 115, 126; *see* E.D. Cal. L.R. 281(a)(1) (requiring the parties to file separate pretrial statements not less than 14 days before the pretrial conference). The conference was subsequently reset for December 7, 2015. ECF No. 130. Gogineni once again violated the court's orders and local rules by failing to file a pretrial statement and failing to appear at the pretrial conference. Accordingly, Mr. Gogineni was ordered to show cause, in writing, why sanctions should not be imposed, including striking his answer to the complaint, or in the alternative his demand for a jury trial. ECF No. 135. Gogineni also failed to respond to that order.

Based on his repeated violations of court orders and the local and federal rules, the court stuck Gogineni's jury demand. ECF No. 137.[4] At plaintiff's request, the case proceeded to a bench trial on January 25, 2016, and, unsurprisingly, no appearance was made on behalf of Gogineni.

II.     Factual Background

Testimony from plaintiff and Shirlyn Jacobs and the evidence presented at trial demonstrated the following.

Plaintiff and defendant Gogineni both previously worked for First Health Group Corporation ("First Health"). In 1999, First Health was experiencing difficulty recruiting and maintaining qualified staff. Shirlyn Jacobs, the former director of information systems at First Health, had discussed the staffing issue with plaintiff on multiple occasions. Plaintiff informed Ms. Jacobs that he could assist her in finding and vetting consultants to work for First Health.

Plaintiff subsequently agreed to form a staffing agency with Gogineni. They decided that the business would be operated under a corporation called Cosmic Technologies Corp. ("Cosmic"), which was an existing corporation formed by Gogineni. They also agreed that Gogineni would be the sole director and officer of Cosmic.

---

[4] The order striking the jury demand acknowledged that Gogineni's conduct may well support an ultimate sanction of striking his answer and entering his default. ECF No. 137 at 2. However, given the federal policy favoring resolution of cases on their merits and plaintiff's request to proceed with a bench trial, the court imposed the lesser sanctions. *Id*.

In February 2000, the parties entered into a Stock Ownership Agreement of Cosmic Technologies Corporation ("stock ownership agreement") that provided that all profits generated by Cosmic would be divided equally between plaintiff and Gogineni, regardless of stock ownership. Pl.'s Ex. 1. That agreement also provided that plaintiff would be issued 800 shares of Cosmic stock, and Mr. Gogineni would hold 1200 shares. *Id.* Plaintiff was also granted an option to purchase 400 additional shares. *Id.*

The majority of the work performed by plaintiff on behalf of Cosmic involved finding, vetting, and placing qualified consultants with First Health. After placement was completed, there was little additional work that needed to be performed. The consultant would work on site at First Health, use its equipment, and was managed by First Health supervisors. The only task performed by Cosmic was processing bi-monthly payments, which took no more than a few hours to complete and was performed by Gogineni.

Cosmic was successful in placing several consultants with First Health,[5] and in June 2000, Cosmic began distributing profits to plaintiff and Gogineni. However, the two decided to distribute profits as bi-weekly salary. Gogineni told plaintiff that an attorney had informed him that distributing profits as salary was more economical than issuing dividends because it would reduce Cosmic's corporate taxes.[6] Despite the limited work performed by both parties, the profits were substantial. Plaintiff received $123,034 in 2000, $191,550 in 2001, $179,000 in 2002, and $87,000 from January through May 2003.

In June 2003, Gogineni stopped distributing profits and the parties' working relationship significantly deteriorated. The strained working relationship eventually led to Gogineni sending plaintiff a letter claiming that the stock ownership agreement was invalid and that plaintiff did not have any interest in Cosmic. Pl.'s Ex. 13. Due to the hostility, plaintiff sought to exercise his option to purchase 400 additional shares of stock, which would have made the parties equal

---

[5] It is unclear exactly how many consultants were placed. However, plaintiff indicated that at one time they had as many as 15-20 consultants working for First Health.

[6] There was no evidence that Cosmic paid plaintiff or Gogineni a legitimate salary for the work they performed for the corporation. All compensation was provided through profit distributions.

4

1    shareholders.  Plaintiff deposited $400 into Cosmic's bank account in an effort to complete the

2    purchase.  Pl.'s Exs. 3, 4.  However, there is no evidence that plaintiff was ever issued these

3    stocks.  In fact, in July 2003, Gogineni wrote plaintiff a letter on behalf of Cosmic stating that he

4    was in breach of their shareholder agreement, the cashier's checks used to purchase the stock

5    were being returned, and that plaintiff should immediate return corporate property.  Pl.'s Ex. 14.

6         The parties' dispute eventually led to litigation in two separate state court actions.  During

7    the state court proceedings, plaintiff sought to obtain Cosmic's financial records.  *See* Pl.'s Exs.

8    16, 18.  On July 2, 2004, after more than a year of not receiving any profit distributions, plaintiff

9    sent a letter to Cosmic requesting to review its financial records.  Pl.'s Ex. 18.  The letter also

10   expressed plaintiff's suspicion that Gogineni "has been defrauding the corporation of corporate

11   funds by making improper payments to himself, paying the personal expenditures with corporate

12   funds, including personal legal fees, and siphoning funds of the corporation to a side corporation,

13   Titan InfoTech Corp."  *Id*.  Gogineni, on behalf of Cosmic, responded to plaintiff's request,

14   stating that Cosmic was not willing to agree to plaintiff's request.  Pl.'s Ex. 19.  Plaintiff was

15   never successful in obtaining the financial documents, and the state court cases were eventually

16   dismissed.  *See* Pl.'s Ex. 17, 19, 21.

17        On October 25, 2006, Gogineni filed a certificate of dissolution and Cosmic was

18   dissolved.  Pl.'s Ex. 8.  In March 2007, plaintiff requested that he be provided his portion of the

19   corporation's assets.  Cosmic's counsel responded that the corporation had incurred substantial

20   costs in litigating the state court actions, and that Cosmic did not anticipate having any remaining

21   assets to distribute to shareholders after satisfaction of its debts.  Pl.'s Ex. 22.

22        However, evidence submitted at trial shows that Gogineni used Cosmic's funds for more

23   than just paying the corporation's legal fees.  Between January 2003 and September 2005,

24   Gogineni received numerous checks from Cosmic, totaling $611,100.41.  Pl.'s Ex. 38a.  The vast

25   majority of the checks were issued after June 2003, when Cosmic ceased distributing profits to

26   plaintiff.

27        Between February 2003 and January 2006, Cosmic also made payments totaling $480,630

28   to Titan InfoTech Corp. ("Titan"), a corporation Gogineni formed shortly after the parties

launched their joint venture. Pl.'s Ex. 39a. Gogineni was the sole director, officer, and shareholder of Titan. *See* Ex. 9. Plaintiff testified that Titan did not perform any legitimate services or have any legitimate business dealings with Cosmic, or any other entity,[7] and that Titan was used solely by Gogineni to siphon money away from Cosmic. Titan's financial records show that large sums of money were transferred directly to Gogineni, and to TD Waterhouse to fund Gogineni's Individual Retirement Account. Pl.'s Ex. 42a.

Further, Gogineni wrote three checks, on behalf of Cosmic, to Kantamaneni Rajani, a resident of India and Gogineni's relative. Pl.'s Ex. 40a. The total amount of the checks was $29,656. *Id*. Plaintiff testified that Cosmic had no business in India and that there was no legitimate reason to issue these checks to this individual.

Lastly, between July 2003 and August 2006, Cosmic issued several checks, totaling $208,105.14, to the law firm Watson Khachadourian & Iams, LLP and attorney Whitney F. Washburn. Pl.'s Ex. 41a. Plaintiff testified that Gogineni personally received legal services from Washburn and the firm Watson Khachadourian & Iams. Further, plaintiff testified that Cosmic only received legal representation from Bullivant Houser Bailey, P.C. Pl.'s Exs. 17, 19, 21, 22, 28. Thus, Gogineni used Cosmic funds to pay significant legal fees he personally incurred.

III.   Discussion

Plaintiff asserts claims for (1) fraudulent concealment, (2) negligent misrepresentation, and (3) breach of fiduciary duty.

A.   Fraudulent Concealment

Under California law, a claim for fraudulent concealment requires knowing concealment with the intent to default, which induces justifiable reliance and results in injury. *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007). Thus, plaintiff must prove that (1) defendant concealed or suppressed a material fact, (2) that he was under a duty to disclose the fact to plaintiff, (3) defendant intentionally concealed or suppressed the fact with the intent to defraud, (4) plaintiff was unaware of the fact and would not have acted as he did if he had known

---

[7] In response to an interrogatory, Gogineni admitted that Cosmic was Titan's only client. Ex. 43, No. 3.

6

of the concealed or suppressed fact, and (5) plaintiff sustained damages as a result of the concealment or suppression of the fact. *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1126-1127 (2010).

The evidence demonstrates that Gogineni intentionally suppressed the fact that he was misappropriating Cosmic's funds for his own benefit. In 2001 and 2002, he gave himself greater profit distributions than he provided to plaintiff, but represented that the parties were receiving an equal amount. He also denied plaintiff's request to review Cosmic's financial documents to conceal the distributions he made to himself and third-parties.

Gogineni was also a majority shareholder, owning 1200 shares of Cosmic stock to plaintiff's 800.[8] Pl.'s Exs. 1, 6. As a majority shareholder and officer, he gained knowledge of inside information regarding the distribution of profits, which "gives rise to a duty to disclose because of the necessity of preventing a corporate insider from . . . tak[ing] unfair advantage of the uninformed minority stockholders." *Chiarella v. United States*, 455 U.S. 222, 228-229 (1980); *Cf Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1257-1258 (2004) ("[A] minority shareholder [may] bring a personal action alleging a majority stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value.") (quotations omitted).

Further, Gogineni's misrepresentations that equal profit distributions were issued, combined with his efforts to hinder plaintiff's review of Cosmic's financial records, demonstrates that he acted with the intent to deprive plaintiff of his rightful share of Cosmic's profits.

However, plaintiff failed to submit evidence establishing the fourth element of fraudulent concealment—that he would have acted in a different manner had he known of the improper distributions of Cosmic funds. Stated differently, plaintiff has failed to establish that Gogineni's

---

[8] At trial, plaintiff argued that he was an equal shareholder because he attempted to exercise his option to purchase additional stock. However, he did not present any evidence establishing that he was ever issued additional stock. Despite plaintiff's attempts to establish the contrary, his status as a minority shareholder actually benefits his claims. *See Shum v. Intel Corp*, 633 F.3d 1067, 1076 (9th Cir. 2010) ("[A] fiduciary duty does not arise between equal shareholder in a corporation merely by virtue of their legal relationship as shareholders. There is similarly no duty even if they also serve as directors or officers of the corporation.").

concealment resulted in justifiable reliance. "Reliance can be proven in a fraudulent omission case by establishing that had the omitted information been disclosed, the plaintiff would have been aware of it and acted differently." *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 250-251 (2011). Gogineni's concealment of his misappropriation of funds did not cause plaintiff to act in a manner different from how he would have acted had he known of Gogineni's conduct. Rather, Gogineni's concealments merely served to cover up his wrongful conduct, not to induce any action by plaintiff.

Accordingly, plaintiff failed to establish his reliance by a preponderance of the evidence, and therefore is not entitled to relief on this claim.

B. Negligent Misrepresentation

To succeed on his claim of negligent misrepresentation, plaintiff must demonstrate (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant had no reasonable ground for believing the representation was true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. *West v. JPMorgan Chase Bank*, N.N., 514 Cal. App. 4th 780, 792 (2013).

As was the case with plaintiff's fraudulent concealment claim, this claim fails due to the lack of reliance. At trial, plaintiff explained that his negligent misrepresentation claim is predicated on Gogineni's false statement that the parties were receiving equal profit distributions. Again, plaintiff did not submit any evidence that this misrepresentation induced him to act in a manner different than he would have had the misrepresentation not been made. Accordingly, plaintiff has failed to establish his entitlement to relief on this claim.

C. Breach of Fiduciary Duty

Plaintiff has proven his claim for breach of a fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damages proximately caused by the breach." *Tribeca Companies, LLC v. First American Title Insurance Company*, 239 Cal. App. 4th 1088, 1114 (2015). "California Courts have often recognized that majority shareholders, either singly or acting in concert to

accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority." *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1253 (2004) (quoting *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 108 (1969)).

As noted, Gogineni was a majority shareholder and plaintiff was a minority shareholder. Pl.'s Exs. 1, 6. Accordingly, Gogineni owed plaintiff a fiduciary duty to "control the corporation in a fair, just, and equitable manner," and to not use his power to control corporate activities for his benefit and to the detriment of plaintiff. As discussed above, Gogineni made numerous transfers of Cosmic's assets that were clearly for his own benefit. He transferred money to Titan, a corporation he owned and operated. Pl.'s Ex. 39a. He used Cosmic's funds to pay his personal attorneys (Pl.'s Ex. 41a), and transferred money to a relative residing in India (Pl.'s Ex. 40a). Between 2001 and 2003, he disregarded the agreement that profits would be distributed evenly and issued himself larger distributions than were issued to plaintiff. Pl.'s Exs. 24; 25; 43, No. 4. Lastly, beginning in June 2003 he refused to distribute any profits to plaintiff, while continuing to issue himself distributions.

These actions served to benefit Gogineni, and resulted in plaintiff being deprived of his rightful share of Cosmic's profits. Accordingly, the evidence at trial conclusively established that Gogineni breached the fiduciary duty he owed to plaintiff.

D.     Damages

Gogineni breached his fiduciary duty by transferring money for his own benefit, which deprived plaintiff of his equal share of Cosmic's profits. In his response to plaintiff's discovery request, Mr. Gogineni admitted that Cosmic paid him $324,731 in 2001 and $365,000 in 2002. Pl.'s Ex. 43, No. 4. However, plaintiff's profit distributions for 2001 and 2002 only totaled $191,550 and $177,324, respectively. Exs. 24, 25; *see also* Ex. 37. Had the profits been distributed evenly as required by the stock ownership agreement, plaintiff would have received an additional $66,590 in 2001 and $93,838 for 2002, for a total of $160,428.

/////

Between January 2003 and September 2005, Gogineni issued himself checks on behalf of Cosmic that totaled $611,100.70. Plaintiff testified that the checks were issued to Mr. Gogineni under the guise of earned salary, and that the amount reflected on each check represented after tax earnings. Plaintiff therefore contends that the $611,100.70 does not accurately reflect the total amount of funds that was diverted from Cosmic because Gogineni would have also used Cosmic's funds to pay the related payroll taxes for each issued check. Plaintiff explained that he is unable to ascertain the pretax amount that Cosmic paid because Gogineni destroyed all relevant records, but estimated that the amount was around $1,129,021.03.[9] Plaintiff did not provide any of the evidence or documents he relied upon to calculate the pretax amount. However, in the course of discovery he properly served Gogineni with a Request for Admissions asking Gogineni specifically to admit that he gave himself $1,129,021.03 from Cosmic Technologies Corp. in pretax payments. Pl.'s Ex. 44, No. 17. Alternatively, Gogineni was served with a request for production directing him to produce any evidence to support any denial of that fact. Gogineni failed to serve a response. As a result, the request for admissions was deemed admitted by operation of law. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ."). With this admission, together with plaintiff's credible testimony, the court finds that Gogineni transferred himself $1,129,021.03 from Cosmic funds.

In 2003, plaintiff received only $86,047 (Ex. 26), and he did not receive any distribution after this year. By Gogineni paying himself $1,129,021.03 and plaintiff only $86,047, plaintiff was deprived of $521,487 of Cosmic's profits.

Gogineni further deprived plaintiff of profits by transferring Cosmic fund to third-parties. Gogineni transferred $240,630 to Titan (Pl.'s Ex. 39a), $29,656 to a family member in India (Pl.'s Ex. 40a), and $208,105.15 to his personal attorneys (Pl.'s Ex. 41a). As plaintiff was entitled to

/////

---

[9] In his response to plaintiff's interrogatory, Mr. Gogineni stated that he did not know the total aggregate amount of funds he received from Cosmic after 2002 because the records were destroyed. Ex. 43, No. 4.

1 half of all profits, these improper transfers caused plaintiff to sustain an addition $239,195.58 in
2 damages.

Thus, the court finds that Mr. Gogineni's breach of his fiduciary duty resulted in plaintiff sustaining $921,110.58 in damages. Accordingly, plaintiff is entitled to judgment in his favor in this amount.

IV.   Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff is entitled to judgment in his favor on his breach of fiduciary duty claim in the amount of $921,110.58; and

2. The Clerk is directed to enter judgment accordingly and close the case.

DATED: September 30, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE